CHARLES CARREON, ESQ. (127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

Attorney for Plaintiff iCall, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICALL, INC., | Case No.: CV 12 2406 EMC |
| Plaintiff, | **MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| TRIBAIR, INC., ERIC REIHER, and Does 1 – 5, | Judge: Hon. Edward M. Chen
Courtroom: 5, 17th Floor
Date: November 16, 2012_
Time: 1:30 p.m. |
| Defendants. | |
| AND RELATED COUNTERCLAIM | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN, PLEASE TAKE NOTICE THAT, pursuant to L.R. 7-2, L.R. 65-2, F.R.Civ.P. 65, and California Business & Professions Code § 14250(a), plaintiff iCall, Inc. will move the Court at 1:30 p.m. on November 16, 2012 for an order preliminarily enjoining the defendants, and each of them, from infringing iCall Registered California Service Mark 66916 within the State of California. Plaintiff has made a good faith effort to resolve the issues raised in this motion informally, and has been unable to do so. The motion will be made based on the attached memorandum of points and authorities, the declarations of Arlo Gilbert and Charles Carreon, associated exhibits, and the proposed Order submitted herewith, and on such further evidence and argument as the Court deems relevant.

Dated: October 12, 2012        CHARLES CARREON, ESQ.
                               By: /s/Charles Carreon
                               CHARLES CARREON (127139)
                               Attorney for Plaintiff iCall, Inc.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

ISSUES .......................................................................................................................................... 2

I. INTRODUCTION ............................................................................................................. 2

II. FACTS .............................................................................................................................. 2

    A. VoIP Technology and the Voice Communications Market ................................... 2

    B. iCall VoIP ............................................................................................................... 3

    C. Plaintiff Offers iCall VoIP Through the iCall.Com Website .................................. 4

    D. Plaintiff's Presence In the Large California Wireless VoIP Market ....................... 5

    E. The iCall Mark Is A Registered California Service Mark ...................................... 5

    F. Tribair's Infringing Activities Take Place In California ......................................... 6

    G. iCall Acted Promptly To Halt Tribair's Infringement By Filing This Action ....... 6

III. ARGUMENT .................................................................................................................... 6

    A. Plaintiff Is Entitled to An Injunction Under the California Trademark Act To Prevent Tribair's Infringing Use of the iCall Mark ............................................................. 6

    B. The Preliminary Injunction Standard ..................................................................... 7

    C. Application of The "Controlling Troika" or "Internet Trinity" Factors Establishes Enjoinable Infringement by Defendant ................................................................. 7

        1. The Similarity Factor Weighs In iCall's Favor, Because WiCall Bodily Incorporates the iCall Mark, and Is Similar in Sight, Sound and Meaning ............ 8

        2. The Relatedness of the Goods and Services Factor Weighs In iCall's Favor, Because Both iCall and WiCall Are VoIP Services ............................................. 9

        3. The Internet Marketing Factor Weighs In iCall's Favor ....................................... 9

    D. The Remaining Five Sleekcraft Factors Do Not Weigh Against A Finding of the Likelihood of Confusion ....................................................................................... 10

        1. iCall Is A Strong Suggestive Mark ..................................................................... 10

        2. Tribair Presumptively Selected the WiCall Mark To Deceive Consumers .......... 11

3. The Likelihood of Expansion in Other Markets Is Not A Highly Relevant Factor Where, As Here, Nearly Identical Products Are Competing In A Single Market ......... 11

4. Consumers Are Unlikely To Exercise Great Care In Selecting A Free or Low-Cost VoIP Provider .............................................................................................. 11

5. Evidence of Actual Confusion Is Not Required ...................................................... 11

E. Plaintiff Has Established A Likelihood of Irreparable Harm ............................................ 12

F. The Balance of the Equities Tips Sharply In Favor of Plaintiff Because Tribair Has "Hedged" Against The Risk of An Adverse Ruling Herein By Deploying A Second Brand of VoIP Under the "Tribair" Brand .................................................................................. 12

G. An Injunction Will Favor the Public's Interest In Not Being Deceived or Confused ...... 13

IV. CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*American Distilling Co. v. Bellows & Co.,* 102 Cal. App. 2d 8 (1951) ........................................ 7

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. Cal. 1979) ................................................ 7

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1055 n. 16 (9th Cir.1999) ................................................................................................................................................ 8

*Brookfield,* 174 F.3d at 1057 ........................................................................................................ 11

*Brookfield,* 174 F.3d at 1059 ........................................................................................................ 10

*Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ............................ 7

*Cytosport, Inc. v. Vital Pharm., Inc.,* 617 F.Supp. 2d 1051, 1081-1082 (E.D.Cal. 2009) ............ 12

*Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1144 (9th Cir.2002) ...................................... 9

*Goto.com,* 202 F.3d at 1207 ........................................................................................................... 9

*Goto.com,* 202 F.3d at 1209 ................................................................................................... 10, 11

*Goto.com, Inc.,* 202 F.3d at 1208 ................................................................................................. 10

*Hy-Cross Hatchery, Inc. v. Osborne,* 303 F.2d 947 (C.C.P.A., 1962) .......................................... 5

*Interstellar Starship Services v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) ............................. 8

*Interstellar Starship Services v. Epix, Inc.,* 304 F.3d at 942 ....................................................... 10

*Leventhal v. Ollie Morris Equipment Corp.,* 184 Cal. App. 2d 553, 559 (Cal. App. 2d Dist. 1960) ................................................................................................................................................ 4

*Maxim* 654 F.Supp.2d at 1031 ....................................................................................................... 8

*Maxim Integrated Products, Inc. v. Quintana,* 654 F.Supp.2d 1024 (N.D.Cal. 2009) .................. 8

*Maxim,* 654 F.Supp.2d at 1033 .................................................................................................. 8, 11

*Maxim,* 654 F.Supp.2d at 1035 – 1036 ........................................................................................ 12

*Maxim,* 654 F.Supp.2d at *id* ........................................................................................................... 8

*Maxim, supra* at 1032 ..................................................................................................................... 9

*Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666 (7th Cir. 1982) ....................................... 5

*Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F.Supp.2d 1271, 1282 (C.D.Cal.2008) ............ 13

*Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137 (9th Cir. Cal. 2011) .......... 7

*Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1394 (9th Cir.1993) ..................................... 11

*Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 198 (3rd Cir. 1990) ................ 13

*Pepsico, Inc. v. The Grapette Company, Inc.,* 416 F.2d 285 (8th Cir. 1969) ................................. 5

*PerfumeBay v. eBay,* 506 F.3d at 1174 ......................................................................................... 9

*Perfumebay v. eBay*, 506 F.3d 1165, 1173 .................................................................................... 8

*Perfumebay v. eBay, supra,* 506 F.3d at 1175 ............................................................................ 10

*Perfumebay, supra,* 506 F.3d at 1175 ........................................................................................... 9

*Perfumebay.com, Inc. v. eBay, Inc.,* 506 F.3d 1165, 1174 (9th Cir. 2007) .................................... 8

*Sanrio Co. v. J.I.K. Accessories,* 2012 U.S. Dist. LEXIS 55280 (N.D. Cal. April 9, 2012) .......... 7

Section 14250(a) ............................................................................................................................ 6

**Statutes**

Business & Professions Code § 14272 .......................................................................................... 6

Business & Professions Code §§ 14200 *et seq.* ........................................................................... 6

F.R.Civ.P. 65 .................................................................................................................................. 7

**ISSUES**

1. Whether Plaintiff has established a likelihood of confusion under the "Internet Troika" test by a showing that:

   a. Tribair's "WiCall" mark is similar to Plaintiff's "iCall" mark;
   b. Plaintiff's iCall VoIP service and Tribair's VoIP service are related; and,
   c. Plaintiff and Tribair market VoIP service over the Internet.

2. Whether any of the other five *Sleekcraft* factors weigh strongly against the likelihood of confusion.

## I. INTRODUCTION

Plaintiff is the registered owner of California Service Mark 66916 for "iCall" in the fields of "Telecommunications Services, Carrier Services, and Mobile Platforms" (herein the "iCall Mark"). Plaintiff offers Voice-Over Internet Protocol ("VoIP") services through its iCall.Com website and the Apple App Store using the iCall Service Mark.  Defendants are using the confusingly-similar "WiCall" mark, that wholly incorporates the iCall Mark.  Plaintiff contends that the conduct of the Defendants infringes its rights under the California Trademark Act (the "Act"), and seeks a preliminary injunction restraining Defendants from utilizing the iCall Mark in the WiCall formulation, or in any other confusingly-similar form, in the App Store, on the Internet, or in any marketing venue whatsoever visible in the State of California.

## II. FACTS

### A. VoIP Technology and the Voice Communications Market

The Federal Communications Commission ("FCC")[1] defines VoIP as follows:

> "Voice over Internet Protocol (VOIP) is a technology for communicating using 'Internet protocol' instead of traditional analog systems. *** VoIP converts the voice signal from your telephone into a digital signal that can travel over the Internet. If you are calling a regular telephone number, the signal is then converted back at the other end. Depending on the type of VoIP service, you can make a VoIP call from a computer, a special VoIP phone, or a traditional phone with or without an adapter. In addition, new wireless "hot spots" in public locations such as airports, parks, and cafes allow you to connect to the Internet, and may enable you to use VoIP service wirelessly."

---

[1] FCC Consumer Facts, Voice Over Internet Protocol (VoIP), issued 9/21/09, online publication at http://www.fcc.gov/cgb/consumerfacts/voip.pdf (herein "FCC VoIP Brochure").

VoIP is "growing rapidly and … increasingly is used to provide local telephone service." [2] As of June 2011, there were 34 million interconnected VoIP subscriptions in the United States, a 17% increase over the prior year, while "traditional wired telephone services has declined." (FCC Report, page iii.) In other words, VoIP is on track to eclipse traditional wired telephone service in the United States.

### B. iCall Pioneered VoIP In The App Store

iCall software provides VoIP services to users of the Apple iPhone, iPad, and iPod, as well as on Android mobile devices and desktop computers. (Gilbert Dec. ¶ 2.) The software is distributed in the Apple App Store, and over the broader Internet as "iCall" VoIP (the "iCall Mark"). Plaintiff's VoIP calling platform uses proprietary computer programs developed exclusively in-house by Plaintiff's programmers. (Gilbert Dec. ¶ 3.) Portions of the iCall VoIP software have been patented with the U.S. Patent & Trademark Office, and the entire program has been registered with the U.S. Copyright Office. (Exhibit 1, Patent No. US 8,090,082; Exhibit 2, Registration TX 7-453-701; Gilbert Dec. ¶ 3.) By producing a string of technical "firsts," Plaintiff has garnered outsized publicity for iCall VoIP, making the iCall Mark synonymous with its own VoIP service. (Gilbert Dec. ¶ 9.)

With over 15 Million downloads of its software loaded onto mobile and desktop devices, Plaintiff's system now carries 1 Billion minutes of global voice traffic per month; thus, Plaintiff's iCall Mark has developed a secondary meaning in the minds of VoIP users in the App Store and over the broader Internet. (Gilbert Dec. ¶¶ 16 – 18.) iCall, Inc. offers VoIP Service in both free and paid versions, and offers wholesale VoIP solutions through iCall Carrier Services. (Gilbert Dec. ¶ 4.)

Plaintiff's most popular version of the software is sold through the Apple iPhone "App Store," and runs on the iPhone and the iPod music player. (Gilbert Dec. ¶ 5.) Over half of all downloads of the iCall software are made through the Apple App Store. (Gilbert Dec. ¶ 5.)

---

[2] June 30, 2012, <u>Local Telephone Competition: Status as of June 30, 2011</u>, published by the FCC Industry Analysis and Technology Division Wireline Competition Bureau (the "FCC Report"). http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-314631A1.pdf.

**MOTION FOR PRELIMINARY INJUNCTION, Page** 3

Plaintiff's iCall software has been at the forefront of iPhone VoIP, becoming the first company to move into the market when AT&T and Apple agreed to allow VoIP providers with approved Apps to access the AT&T wireless data network. (Gilbert Dec. ¶ 6.) Although today, iPhone users take it for granted that they can use VoIP Apps, when Plaintiff submitted its iCall App to the App Store, it was not at all clear that the iCall App would ever be approved, and it languished on the shelf for six months before Apple flagged it "Ready for Sale." (Gilbert Dec. ¶ 5.)

The iCall software was the first to enable conversion of a media player, the iPod Touch, into a portable phone, and the first to allow users of the iPhone and iPod platform to make long-distance telephone calls at no cost. (Gilbert Dec. ¶¶ 6-7.) This is made possible by the wireless antenna in the iPod Touch, that was included so that users could download music from the iTunes store, and later became the conduit for downloading compatible computer programs from the App Store. (Gilbert Dec. ¶ 8.) Thus, anytime an iPod user with the California Service Mark software is in one of the innumerable "WiFi hot-spots" that are found in homes, offices, and coffee-shops, they can make a long-distance VoIP call for free. iCall VoIP is truly a unique product that puts amazingly powerful, virtually free, one-of-a-kind communications capabilities in the hands of people who may not even have telephones. As the statistics cited *infra* demonstrate, VoIP generally, and particularly VoIP delivered through wirelessly to the iPhone, iPad, and iPod Touch, are of dominant commercial importance in the California computer-products marketplace.

### C. Plaintiff Offers iCall VoIP Through the iCall.Com Website

Plaintiff's CEO acquired the iCall.Com domain, the flow of Internet customers accustomed to doing business through the iCall.Com website, and the Federal registration for the iCall Mark, in a single transaction effective July 24, 2004.[3] (Gilbert Dec. ¶ 16.) The iCall.com

---

[3] "[A] trade-mark as an accessory of property, or as a thing to be used in connection with one's business, and applicable to the product of his manufactory or to his goods in trade, is a subject of the law's care, and is assignable. . . ." *Leventhal v. Ollie Morris Equipment Corp.,* 184 Cal. App. 2d 553, 559 (Cal. App. 2d Dist. 1960) (citation omitted). "[A]ny assignment … requires the mark itself be used by the assignee on a product having substantially the same characteristics." *Pepsico, Inc. v. The Grapette Company, Inc.,* 416 F.2d 285 (8th Cir. 1969); *accord, Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666 (7th Cir. 1982), *citing Hy-Cross Hatchery, Inc. v. Osborne,* 303 F.2d 947 (C.C.P.A., 1962).

domain was first registered on November 26, 1996, and was the platform from which Plaintiff's predecessor in interest deployed VoIP services. (Gilbert Dec. ¶ 16.) Plaintiff has maintained and developed the iCall.Com website as the primary marketing and sales location for iCall VoIP, and has grown the business to the point where Plaintiff's private network now carries over 1 Billion minutes of global voice traffic per month. (Gilbert Dec. ¶ 17.)

### D. **Plaintiff's Presence In the Large California Wireless VoIP Market**

California is the pre-eminent WiFi hot-spot Mecca in the United States, consuming 18% of the nation's Wi-Fi bandwidth, with four cities among the top twenty WiFi markets: Los Angeles (9.6%), San Francisco (3.9%), San Diego (1.5%), and Sacramento (1.0%). (Gilbert Dec. ¶ 10; Exhibit 5, "AdMob Metrics Report," January 2009.) The largest number of requests for wireless service also come from the two Apple devices that run iCall VoIP software: the iPhone (24.2%) and iPod Touch (16.2%). (Exhibit 6, AdMob Metrics Report, January 2010.) California also has the largest concentration of VoIP usage in general, according to the FCC VoIP Report, that shows that its citizens are far and away the largest consumers of VoIP services of every type, both in business and residential usage. (Exhibit 17.) Over half of all downloads of the iCall software are made through the Apple App Store. (Gilbert Dec. ¶ 11.) Thus, the epicenter of Plaintiff's market is California. (Gilbert Dec. ¶ 11.)

### E. **The iCall Mark Is A Registered California Service Mark**

Plaintiff owns the iCall Mark, registered as California Service Mark 66916 by the California Secretary of State on November 9, 2010, for use in commerce in connection with Telecommunications Services, Carrier Services and Mobile Platforms. (Gilbert Dec. ¶ 12; Exhibit 7.) The first use of the iCall Mark in commerce in California was the incorporation of iCall, Inc. as a California corporation in April 1999. (Gilbert Dec. ¶ 12; Exhibit 7.) Additionally, Plaintiff owns the Federal registration for the iCall Mark by assignment. (Gilbert Dec. ¶¶ 13 – 14; Exhibits 8 and 9.)

/ / /

/ / /

/ / /

### F. Tribair's Infringing Activities Take Place In California

Tribair is marketing a VoIP service under the "WiCall" mark in the California-based Apple App Store, and on the Internet, where it is viewed throughout California. (Gilbert Dec. ¶ 19; Exhibit 11.)

### G. iCall Acted Promptly To Halt Tribair's Infringement By Filing This Action

Promptly after discovering the infringement occurring in the Apple App Store, on March 16, 2012, Plaintiff's counsel sent a takedown request to the App Store that, pursuant to Apple's usual practice, was forwarded to Tribair. (Carreon Dec. ¶¶ 3 - 5.) Tribair responded by submitting a fraudulent trademark application to the USPTO for the phrase "WiCall," in which defendant Reiher represented that he had no knowledge of any competing use. (Carreon Dec. ¶ 5.) Plaintiff promptly filed this action and submitted a Letter of Protest to the USPTO, that was accepted by the Commissioner for Trademarks on July 10, 2012. (Carreon Dec. ¶ 5; Exhibit 14.)

## III. ARGUMENT

### A. Plaintiff Is Entitled to An Injunction Under the California Trademark Act To Prevent Tribair's Infringing Use of the iCall Mark

The California legislature adopted the Model State Trademark Law in 2007, codified as Business & Professions Code §§ 14200 *et seq.*, effective date January 1, 2008 (the "Act"). As under the federal system, holders of registered California trademarks may obtain injunctions to restrain infringement. Section 14250(a) provides in relevant part:

> "Any owner of a mark registered under this chapter may proceed by suit to enjoin the manufacture, use, display, or sale of any counterfeits thereof and any court of competent jurisdiction may grant injunctions to restrain the manufacture, use, display, or sale as may be deemed just and reasonable, and shall require the defendants to pay to the owner up to three times their profits from, and up to three times all damages suffered by reason of, the wrongful manufacture, use, display, or sale."

In adopting the Act, the California legislature pronounced the legislative intent to "provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration," and deemed "construction given the federal act …

nonbinding authority for interpreting and construing this chapter." Business & Professions Code § 14272.

Plaintiff's ownership of the Federal registration definitively strengthens its rights under California law, because "… a valid trade-mark under federal law … will undoubtedly be recognized as such by the California courts." *American Distilling Co. v. Bellows & Co.,* 102 Cal. App. 2d 8 (1951).

### B.  The Preliminary Injunction Standard

The general standard for issuing a motion for a preliminary injunction under F.R.Civ.P. 65 is a four-part test.

> "A plaintiff seeking a preliminary injunction must establish: (1) that he/she is likely to succeed on the merits, (2) that he/she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his/her favor, and (4) that an injunction is in the public interest.
>
> *Seed Servs., Inc. v. Winsor Grain, Inc.,* 2012 U.S. Dist. LEXIS 51779 (E.D. Cal. Apr. 11, 2012)*, citing Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 18, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

### C.  Application of The "Controlling Troika" or "Internet Trinity" Factors Establishes Enjoinable Infringement by Defendant

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Unless other factors weigh strongly against finding a "likelihood of confusion" between the two marks, entitlement to an injunction in an Internet infringement case is established by proof of three factors: (1) defendant's use of a mark similar to plaintiff's, (2) to market related goods and services, (3) on the Internet. Of the eight factors enunciated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. Cal. 1979), these are the "controlling troika": [4]

---

[4] Only one type of case has fallen outside the troika's control, *eg., Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137 (9th Cir. Cal. 2011)(mark as search-engine keyword).

> "In the internet context, 'the three most important *Sleekcraft* factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the Web as a marketing channel.' ***When this controlling troika or internet trinity suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement***."
>
> *Perfumebay v. eBay*, 506 F.3d 1165, 1173, quoting *Interstellar Starship Services v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) (emphasis added).

Infringers like Tribair, who alter a competitor's mark by a smidgin, seeking to obtain unfair market advantage, fair poorly on the troika. For example, in *Maxim Integrated Products, Inc. v. Quintana,* 654 F.Supp.2d 1024 (N.D.Cal. 2009), the owner of the "iButton" mark moved for an injunction against use of the "My-iButton" mark. Applying the troika factors, Judge Ware found that the facts merited issuing the requested injunction.[5]

The *Maxim* plaintiff established ***similarity*** of the marks by proof that "'My-iButton' incorporates 'I Button' in its entirety." *Maxim,* 654 F.Supp.2d at 1033, *citing Perfumebay.com, Inc. v. eBay, Inc.,* 506 F.3d 1165, 1174 (9th Cir. 2007) (cojoined "perfumebay" mark infringed eBay mark). The *Maxim* plaintiff established ***relatedness*** of the products by proof that the infringing product was a "computer chip enclosed in a 16mm-thick stainless steel can," and defendant's product was "a portable MP4 promotional device that … displays videos or pictures…." *Maxim,* 654 F.Supp.2d at *id*. The *Maxim* plaintiff established ***use of the Internet for marketing*** by proof that "Plaintiff and Defendants use the Internet as a significant marketing channel for their products…." *Maxim,* 654 F.Supp.2d at *id*. The facts in this case fit precisely within the *Maxim* mold.

### 1. The Similarity Factor Weighs In iCall's Favor, Because WiCall Bodily Incorporates the iCall Mark, and Is Similar in Sight, Sound and Meaning

The first Internet Trinity factor weighs in favor of iCall because the iCall mark and the WiCall marks share controlling similarities. Like the *Maxim* defendant, Tribair incorporated the entire iCall Mark into its "WiCall" mark. Observing that "similarities weigh more heavily than

---

[5] Although Judge Ware went on to analyze the case under all eight *Sleekcraft* factors, he acknowledged the primacy of the troika factors, and analyzed them first. *Maxim* 654 F.Supp.2d at 1031, *citing Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1055 n. 16 (9th Cir.1999).

differences." Judge Ware found that "iButton" and "My-iButton" were "strikingly similar." *Maxim,* at 1031. *Maxim at id., citing Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1144 (9th Cir.2002). Thus, in the case at bar, Tribair's incorporation of the entire iCall Mark must be given the largest evidentiary weight. Whatever difference remains is so slight as to merit no consideration.

Similarity may also be analyzed according to the three subsidiary elements of "sight, sound, and meaning." Similarity by sight, *i.e.,* visual similarity, may arise from the infringer's use of similar **typography**. *PerfumeBay v. eBay,* 506 F.3d at 1174. Tribair has strengthened the visual similarity by copying the typography of the iCall Mark, incorporating the small "i" and upper-case "C" into the WiCall mark. Thus, with respect to "sight," the similarity between the marks is overwhelming. When spoken, "WiCall," is nearly undistinguishable from "iCall," and thus they have a similar sound. Finally, with respect to "meaning," the "iCall" mark is merely suggestive, and adding a "W" to this suggestive term does not alter its meaning, but rather sows confusion and invites mistake as to the origin of WiCall VoIP.

### 2. The Relatedness of the Goods and Services Factor Weighs In iCall's Favor, Because Both iCall and WiCall Are VoIP Services

The second of the Internet Trinity factors weighs in favor of iCall. In weighing this factor, the *Maxim* decision notes that "a court must focus on consumers and ask whether they are likely to associate two products." *Maxim, supra* at 1032. Tribair is offering the exact same product as iCall: VoIP. (*Compare* Exhibit 4, the iCall App Store webpage, with Exhibit 11, the WiCall App Store webpage.) From the standpoint of the consumer, iCall and WiCall are essentially identical services. (Gilbert Dec. ¶ 5.)

### 3. The Internet Marketing Factor Weighs In iCall's Favor

Both Plaintiff and Tribair utilize the Internet as the primary marketing channel for VoIP services, because they both use the Apple App Store and the wider Internet as their primary, avenues of marketing. (Gilbert Dec. ¶¶ 4, 17, and 20; Exhibits 5, 10, 11 and 12.) "The Web, as a marketing channel, is particularly susceptible to a likelihood of confusion, since … it allows for competing marks to be encountered at the same time, on the same screen." *Perfumebay,*

*supra,* 506 F.3d at 1175, *quoting Goto.com,* 202 F.3d at 1207. Internet users have little incentive to draw distinctions between two offerings of what appear to be the identical service, and thus, "the question in this analysis is … how high the cost is of choosing one service – that is, one web site – over another…." *Goto.com,* 202 F.3d at 1209. Clearly, as between two free and low-cost VoIP services with closely related names, the cost of choosing one service over the other is nil.

### D. The Remaining Five Sleekcraft Factors Do Not Weigh Against A Finding of the Likelihood of Confusion

When "the three primary factors for internet trademarks weigh against" the non-moving party, "the remaining *Sleekcraft* factors… 'must weigh strongly against a likelihood of confusion to avoid the finding of infringement.'" *Perfumebay v. eBay, supra,* 506 F.3d at 1175, *quoting Interstellar Starship Services v. Epix, Inc.,* 304 F.3d at 942. None of the *Sleekcraft* factors weigh strongly against a finding of likelihood of confusion. Indeed, all those that have application to this case either incline in Plaintiff's favor, or favor neither party.

#### 1. iCall Is A Strong Suggestive Mark

In *Goto.com,* the Ninth Circuit observed the diminished importance of this factor when the conflicting marks and the competing services are "almost identical," as is the case here:

> "We do not believe this factor to be of much importance in either the context of the Internet generally or in this case specifically, regardless of whether either logo had herculean strength. In *Brookfield,* we noted that in situations in which the appearance of the conflicting marks and the services provided are almost identical, 'the strength of the [senior user's] mark is of diminished importance in the likelihood of confusion analysis.' We underline that conclusion here."
>
> *Goto.com, Inc.,* 202 F.3d at 1208, *quoting Brookfield,* 174 F.3d at 1059.

However, Plaintiff's mark fares well when subjected to an analysis of its strength in the same manner Judge Ware applied in *Maxim*. iCall is a suggestive mark, of inherently "moderate" strength, that has been "strengthened by such factors as extensive advertising, length of exclusive use, [and] public recognition." *See Maxim,* at 1033. Like the iButton mark in *Maxim,* iCall and its predecessor in interest have had exclusive use of the mark for an extended period of time – fourteen years. *Maxim, at id.* (iButton mark in use "nearly ten years"). And as in *Maxim*, Plaintiff here has invested approximately $4,000,000 in developing the iCall technology and marketing its VoIP products, resulting in the over 15 Million downloads.

(Gilbert Dec. ¶ 18.) *See Maxim, at id.* (investment of $2 Million and more than a million iButton products currently in use warranted finding that "strength of iButton mark weighs in favor of Plaintiff"). Accordingly, this factor weighs in Plaintiff's favor.

### 2. Tribair Presumptively Selected the WiCall Mark To Deceive Consumers

"Where a defendant knowingly adopts a mark similar to another's, the court may presume an intent to deceive consumers. " *Maxim,* 654 F.Supp.2d at 1033, *citing Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1394 (9th Cir.1993). Thus, this factor weights in Plaintiff's favor.

### 3. The Likelihood of Expansion in Other Markets Is Not A Highly Relevant Factor Where, As Here, Nearly Identical Products Are Competing In A Single Market

As this Court observed in *Maxim,* citing Ninth Circuit authority, this *Sleekcraft* factor is essentially of no relevance where the conflicting marks are already being used in the same market for nearly identical goods. *Maxim,* 654 F.Supp.2d at 1034. That is the case here, and thus this factor carries no weight for either party.

### 4. Consumers Are Unlikely To Exercise Great Care In Selecting A Free or Low-Cost VoIP Provider

This *Sleekcraft* factor is essentially subsumed into the second factor of the Internet Trinity, because as the *Goto.com* and *Brookfield* opinions makes clear virtually as a matter of law, Internet consumers choosing between competing Web-offerings are likely to exercise little effort in distinguishing between the products offered on two different websites. *Goto.com,* 202 F.3d at 1209, *quoting Brookfield,* 174 F.3d at 1057. Both Plaintiff and Tribair both offer free and low-cost VoIP, so consumers have little incentive to scrutinize their offerings in detail. Since both Plaintiff and Tribair offer virtually indistinguishable products through the same Internet market channels, this factor weighs in Plaintiff's favor.

### 5. Evidence of Actual Confusion Is Not Required

Plaintiff does not seek to rely upon evidence of actual confusion, which is not required to justify granting a preliminary injunction, so long as there is a showing of likelihood of confusion. Under both Federal and California trademark law, it is "unnecessary 'to show that any person has

been confused or deceived. It is the likelihood of deception which the remedy may be invoked to prevent.'" *American Distilling Co. v. Bellows & Co.,* 102 Cal. App. 2d 8, 25 (Cal. App. 1951) (affirming injunction restraining use of "Fellows" to brand whiskey, where plaintiff held registration for "Bellows").  Accordingly, this factor does not weigh in Tribair's favor.

### E.     Plaintiff Has Established A Likelihood of Irreparable Harm

> "In trademark cases, irreparable harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade and loss of goodwill. Irreparable injury exists where a court reasonably concludes that continuing infringement will result in loss of control over the plaintiff's reputation and good will."

*Maxim,* 654 F.Supp.2d at 1035 – 1036 (multiple citations omitted).

Tribair's actions, if not enjoined, will result in a loss of control over Plaintiff's reputation and goodwill.  (Gilbert  Dec. ¶ 20.)  Accordingly, this factor weighs in Plaintiff's favor.

### F.     The Balance of the Equities Tips Sharply In Favor of Plaintiff Because Tribair Has "Hedged" Against The Risk of An Adverse Ruling Herein By Deploying A Second Brand of VoIP Under the "Tribair" Brand

Balancing the equities requires this Court to "look to the possible harm that could befall the various parties." *Maxim,* 654 F.Supp.2d at 1036, *citing Cytosport, Inc. v. Vital Pharm., Inc.,* 617 F.Supp. 2d 1051, 1081-1082 (E.D.Cal. 2009).

Denying a preliminary injunction to Plaintiff will result in irreparable harm to its business reputation, as Tribair would continue to predate on the good will generated by the iCall VoIP software, depriving Plaintiff of control over its business reputation due to consumer confusion. (Gilbert Dec. ¶ 20.)  This would be severely inequitable to Plaintiff, that blazed the trail for VoIP Apps in the App Store over three years ago, when it was uncertain whether Apple, that had exclusive relationship with AT&T Mobility to provide the iPhone, would even allow VoIP Apps to be downloaded by iPhone and iPod users.  (Gilbert Dec. ¶ 5.)  But for Plaintiff's efforts, it is unlikely that Tribair would be able to market any VoIP App in the App Store at all.  (Gilbert Dec. at *id.*)

Tribair, on the other hand, will suffer no cognizable injury from an injunction, because Tribair has "hedged its bet" on the renegade WiCall brand by marketing the identical VoIP

service under *two brand names* – both "WiCall" and "Tribair." *See* Exhibit 13, the Tribair VoIP App Store webpage.

Finally, Tribair's potential loss of customers due to the injunction will not cause cognizable prejudice, because those customers were inferrably drawn to do business with Tribair due to confusion with Plaintiff's iCall service.

The balance of the equities clearly tips in favor of granting the injunctive relief to prevent Tribair from continuing to harvest unfair business advantages to the severe detriment of the business welfare of Plaintiff.

### G. An Injunction Will Favor the Public's Interest In Not Being Deceived or Confused

The last factor a court must consider is whether an injunction will favor the public's interest in not being deceived or confused. *Maxim,* 654 F.Supp.2d at 1036, *citing Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F.Supp.2d 1271, 1282 (C.D.Cal.2008), *quoting Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 198 (3rd Cir. 1990). Where the injunction will eliminate a likelihood of confusion between the marks, "the public interest weighs in favor of granting an injunction." *Maxim, at id.* That is the case here. The public will be benefited by enjoining Tribair's infringement of the iCall Mark, thus eliminating a cause of consumer confusion. (Gilbert Dec. ¶ 22.)

### IV. CONCLUSION

Plaintiff's right to the exclusive use of the iCall Mark to offer and sell iCall VoIP products and services is unquestionable. Tribair has appropriated the iCall Mark bodily, a practice that should be enjoined in every form. Accordingly, the Court is respectfully requested to issue a preliminary injunction in the form submitted herewith.

Dated: October 12, 2012        CHARLES CARREON, ESQ.

/s/Charles Carreon
Charles Carreon (CSB 127139)
Attorney for Plaintiff iCall, Inc.