CHARLES CARREON, ESQ. (127139)
Attorney for Plaintiff iCall, Inc.
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ICALL, INC., | Case No.: CV 12-2406 EMC |
| Plaintiff, | **DECLARATION OF CHARLES CARREON IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| TRIBAIR, INC., ERIC REIHER, and Does 1 – 5, | Judge: Hon. Edward M. Chen
Courtroom: 5, 17th Floor
Date: November 16, 2012
Time: 1:30 p.m. |
| Defendants. | |
| AND RELATED COUNTERCLAIM | |

**DECLARATION OF CHARLES CARREON**

Charles Carreon declares and states as follows:

**1.** I am an attorney licensed to practice law in the State of California, admitted to the Bar of this Court, and the attorney for plaintiff iCall, Inc. I make this declaration on personal knowledge and an informed review of relevant documents, and if called as a witness could and would so competently testify.

**2.** I have represented iCall, Inc., ("Plaintiff"), as its primary intellectual property counsel since early 2009, when Plaintiff first began offering the iCall VoIP service through the Apple iTunes Store, that has since changed its name to the App Store.

**3.** I discovered the infringing WiCall App in the App Store on or about March 16, 2012, and immediately sent a cease-and-desist demand to appstorenotices@apple.com requesting a

removal of the App from the App Store. According to its standard practice, Apple forwards this cease-and-desist to the App developer for their response. This is the usual procedure I have followed to remove Apps with infringing names from the App Store. Pursuant to cease-and-desist demands that I and other counsel for iCall have sent, numerous developers who gave their Apps names confusingly-similar to the iCall Mark have been removed from the Apple App Store, including merely as a very limited sampling:

- iCall
- iCall+
- MyCall
- iCallFree
- iCallMe
- KTiCall
- MagiciCall

4. In all of these cases, after a short delay, the App has been re-launched under a non-infringing name, and that ends the matter.

5. After receiving my cease-and-desist letter, Tribair, Inc., defendant herein, did not agree to change the name of the WiCall App. Indeed, Tribair filed a trademark application, attached as Exhibit 8 to the Complaint and First Amended Complaint in this action, in which Eric Reiher, the owner of Tribair, Inc., stated that he had no knowledge of any prior users of the WiCall mark. Given that I had just notified him about the fact that Plaintiff claimed that his bodily incorporation of "iCall" into the WiCall mark was infringing, this appeared to be a fraudulent application. Accordingly, this action was filed, seeking inter alia, cancellation of that application. I filed a Letter of Protest to notify the USPTO of the filing of this action, and on July 10, 2012, the Commissioner for Trademark issued the letter attached as **Exhibit 14**, notifying me that the Letter of Protest was ACCEPTED.

6. In addition to enforcement activities at the App Store, at Plaintiff's direction, I have conducted a continuous campaign of trademark enforcement to cleanse the Internet of imitators

seeking to take exploit customer confusion by counterfeiting or using colorable imitations of Plaintiff's iCall Mark in commerce and domain registrations.

**7.** Plaintiff has prevailed in formal proceedings against several cybersquatters, including:

1. Plaintiff acquired the iCall.IM domain from a cybersquatter, pursuant to arbitration under the Isle of Man Dispute Resolution Procedure that governs adjudication of trademark disputes over Internet domains in the ".IM" country-code domain. **Exhibit 15** is the order from the Isle of Man domain name authority compelling the transfer.

2. Plaintiff filed suit against IVR Technologies, Inc. and secured a stipulated injunction against the IVR, Inc., barring it from offering a competing App in the App Store under the confusingly-similar "MyCall" mark. **Exhibit 16** is a true and correct copy of that stipulated injunction, entered in Central District of California Case No. CV 10-6460.

**8.** Plaintiff sued Reliance Communications Limited, the world's fourth-largest telecommunications company and three of its subsidiaries for cybersquatting the iCall Mark by registering and operating a VoIP website at RelianceiCall.com in *iCall, Inc. v. Reliance Communications Limited, et al.*, USDC Northern District of California Case No. 10-2206 JAW. The matter was settled on terms that remain confidential. RelianceiCall.com no longer resolves to a website.

**9.** Numerous individual domain name owners have either relinquished domain names confusingly-similar to iCall.Com by agreeing to stop using the domains or simply ceasing the publication of websites at the confusing domains. For example, attached as **Exhibit 17** are true and correct copies of two letter agreements that resulted in the removal of two websites at the domains iCallPro.com (in December 2010) and iCallAbroad.com (in August 2012). Both letters have been redacted to respect the privacy of the party or opposing counsel who signed the agreements. I have entered into several other similar agreements on behalf of Plaintiff, thus eliminating infringements and avoiding litigation.

**10.** Pursuant to Plaintiff's demand, the German-based Internet domain-name broker Sedo agreed to stop brokering domain names at its Sedo.com website that incorporated the "iCall" text string within a domain in any manner that would result in the creation of a domain name confusingly-similar to iCall.com. This resulted in the abandonment of several country-code domains such as iCall.es, icall.ir, icall.it, icall.us, and icall.ws by speculators who had been gambling on these obviously cybersquatted domains.

**11.** Pursuant to Plaintiff's demand, Facebook, Inc. transferred the Facebook account at Facebook.com/icall from a social-media-squatter to Plaintiff, thus allowing Plaintiff's Facebook "fans," currently 6,857 and counting, to easily find their favorite VoIP product in that social medium.

**12.** During the last three years, Plaintiff have paid very substantial legal fees to protect the iCall Mark, resulting in many businesses and individuals altering their marketing to end infringing activity.

**13.** Attached hereto as **Exhibit 18** is a true and correct copy of an excerpt from Federal Communication Commission's June 30, 2012, Local Telephone Competition: Status as of June 30, 2011, published by the FCC Industry Analysis and Technology Division Wireline Competition Bureau (the "FCC Report"). The full document is downloadable at http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-314631A1.pdf.

I hereby declare, pursuant to the provisions of 28 U.S.C. § 1746 (2), under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on October 12, 2012.

Executed at Tucson, Arizona
/s/Charles Carreon
Charles Carreon, Declarant