JOHN C. KIRKE, BAR NO. 175055
johnk@donahue.com
ANDREW S. MACKAY, BAR NO. 197074
andrew@donahue.com
SOPHIA E. C. SCHWARTZ, BAR NO. 272915
sophia@donahue.com
DONAHUE GALLAGHER WOODS LLP
Attorneys at Law
1999 Harrison Street, 25th Floor
Oakland, California  94612-3520
Telephone:      (510) 451-0544
Facsimile:       (510) 832-1486

Attorneys for Defendants
TRIBAIR, INC. and ERIC REIHER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICALL, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>TRIBAIR, INC., ERIC REIHER and DOES 1-5,<br><br>            Defendants. | Case No.  CV 12 2406<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          November 15, 2012<br>Time:          1:30 p.m.<br>Ctrm:          5, 17th Floor<br>Judge:        Hon. Edward M. Chen |
| AND RELATED COUNTERCLAIM. | |

1

2

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 1

   I.   "ICALL" IS USED BY COMPANIES OTHER THAN PLAINTIFF AND IS DESCRIPTIVE OF THE SERVICE PLAINTIFF PROVIDES ........................ 1

   II.   THE MARK WICALL HAS NOT CAUSED CONFUSION AMONG CONSUMERS .................................................................................................... 2

   III.   GRANTING THE PRELIMINARY INJUNCTION WOULD CAUSE great HARM TO DEFENDANTS ...................................................................... 3

   IV.   PLAINTIFF RECEIVED THE MARK "ICALL" BY ASSIGNMENT IN GROSS ...................................................................................................... 4

STATEMENT OF ISSUES TO BE DECIDED ........................................................ 4

ARGUMENT ........................................................................................................... 4

   I.   THE LEGAL STANDARD FOR A PRELIMINARY INJUNCTION .................. 4

   II.   APPLYING CALIFORNIA COUNTERFEIT LAWS TO THIS CASE IS INAPPROPRIATE BECAUSE WICALL IS NOT COUNTERFEITING ............. 5

   III.   THE INTERNET TROIKA DOES NOT APPLY BECAUSE WICALL DOES NOT ADVERTISE ONLINE ................................................................. 5

   IV.   THERE IS NO LIKELIHOOD OF CONFUSION on THE TRADEMARK CLAIMS ............................................................................................................ 7

      A.   WiCall And iCall Have Different Sights, Sounds And Meanings, And Incorporation Of Plaintiff's Mark Into Defendant's Mark Does Not Show Infringement ...................................................................... 7

         1.   WiCall Abbreviates "Wireless Calling" Which Gives Defendants' Mark A Substantially Different Meaning Than iCall ................................................................................................ 8

         2.   WiCall Is Phonetically Different From iCall ................................. 9

         3.   WiCall Is Visually Different From iCall ........................................ 9

         4.   The Coincidence That iCall Is Incorporated Into WiCall Does Not Weigh Against Defendant ............................................. 10

      B.   The Services Offered By Plaintiff And Defendants Are Not Identical ................................................................................................. 12

      C.   Defendants Do Not Market On Traditional Internet Channels Because It Does Not Have A Website Or Use Website Advertising ........ 12

      D.   iCall Is A Weak Mark Because It Is Descriptive Or Highly Suggestive And The Mark Is Already In Use In Commerce In Several Other Contexts ............................................................................ 13

      E.   Defendants Never Intended To Deceive Consumers Because Defendants Selected WiCall As Its Mark To Abbreviate "Wireless Calling." ................................................................................................. 14

-i-

F. The Services Of Plaintiff And Defendants Are Not Identical...................15

G. Defendants' Consumers Exercise Adequate Care in Selecting their VoIP Provider ...........................................................................................15

H. Plaintiff Lacks Evidence Of Actual Confusion Because There Is None, Which Weighs In Defendant's Favor...............................................16

V. PLAINTIFF WILL NOT BE UNFAIRLY INJURED BY DENYING THE PRELIMINARY INJUNCTION...................................................................17

VI. DEFENDANTS WOULD BE SEVERELY AND IRREPARABLY HARMED BY THE PRELIMINARY INJUNCTION .........................................17

A. Defendant's Service Is Already In Commerce .........................................18

B. Plaintiff's Demands Would Ruin Customer Loyalty By Making Defendant's Product Unrecognizable To Customers ................................18

C. A Preliminary Injunction Would Disrupt The Status Quo.......................18

VII. PUBLIC POLICY WEIGHS IN FAVOR OF DENYING THE PRELIMINARY INJUNCTION...................................................................19

VIII. THE FEDERAL SERVICE MARK ICALL WAS ASSIGNED WITHOUT A TRANSFER OF THE UNDERLYING BUSINESS, AND HAS THEREFORE BEEN ABANDONED ..................................................................19

CONCLUSION ...........................................................................................................20

-ii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alliance for the Wild Rockies v. Cottrell*
   632 F. 3d 1127 (9th Cir. 2011)...................................................................... 4, 5, 17

*AMF v. Sleekcraft*
   599 F.2d 341 (9th Cir. 1979)........................................................ 1, 5, 6, 7, 14

*Brookfield Comm'ns, Inc. v. West Coast Entertainment Corp.*
   174 F.3d 1036 (9th Cir. 1999)............................................................................. 6

*Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*
   305 F. Supp. 1210 (N.D. Cal. 1969) ................................................................ 19

*Conde Nast Publications, Inc. v. Miss Quality, Inc.*
   507 F.2d 1404 (C.C.P.A 1975) .......................................................................... 11

*Entrepreneur Media v. Smith*
   279 F.3d 1135 (9th Cir. 2002)............................................................................ 13

*First Nat'l Bank v. First Nat'l Bank, South Dakota*
   153 F.3d 885 (8th Cir. 1998)............................................................................. 15

*GoTo.com Inc. v. The Walt Disney Company*
   202 F.3d 1199 (9th Cir. 2000)............................................................................. 6

*Gruner + Jahr USA Pub. v. Meredith Corp.*
   *991 F.2d 1072 (2nd Cir. 1993)* ........................................................................ 11

*Halo Mgmt, LLC v. Interland, Inc.*
   308 F. Supp. 2d 1019 (N.D. Cal. 2003) ................................................... 6, 13, 14

*Hasbro, Inc., v. Clue Computing, Inc.*
   66 F.Supp.2d 117 (D. Mass. 1999) ..................................................................... 7

*iCall, Inc. v. Reliance Communications Ltd., et al.*
   No. 10-cv-02206-JW (N.D. Cal., filed Sept. 16, 2010) ...................................... 11

*iCall, Inc. v. Reliance Communications Ltd., et al.*
   No. 10-cv-02206-JW (N.D. Cal., filed Sept. 16, 2010) ............................... 1, 11, 14

*International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*
   103 F.3d 196 (1st Cir. 1996)............................................................................... 7

*Jupiter Hosting, Inc. v. Juptiermedia Corp.*
   76 U.S.P.Q.2d 1042 (N.D. Cal. 2004) ................................................................ 6

-iii-

*Kendall-Jackson Winery v. E. & J. Gallo Winery*
 150 F.3d 1042 (9th Cir. 1998)............................................................................ 13

*Lever Bros. Co. v. Babson Bros. Co.*
 197 F.2d 531 (Cust. & Pat. App. 1952) ................................................................ 9

*Luiginio's, Inc. v. Soutffer Corp.*
 170 F.3d 827 (8th Cir. 1999)................................................................................. 8

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
 571 F.3d 873 (9th Cir. 2009)............................................................................... 19

*Marshak v. Green*
 746 F.2d 927 (2nd Cir., 1984)....................................................................... 19, 20

*Maxim Integrated Products, Inc. v. Quintana*
 654 F. Supp. 2d 1024 (N.D. Cal. 2009) .............................................................. 10

*Merrill Lynch v. Bradley*
 756 F.2d 1048 (4th Cir. 1985)............................................................................... 4

*Mr. Hero Sandwich Systems, Inc. v. Roman Meal Company*
 781 F.2d 884 (Fed. Cir. 1986)............................................................................. 11

*National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*
 505 F.2d 719 (Cust. & Pat. App. 1974) ............................................................... 9

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*
 638 F.3d 1137 (9th Cir. 2011).............................................................................. 15

*New West Corp. v. NYM Co. of California, Inc.*
 595 F.2d 1194 (9th Cir. 1979)............................................................................. 15

*Perfumebay.com Inc. v. eBay, Inc.*
 506 F.3d 1165 (9th Cir. 2007)......................................................................... 6, 10

*Sardi's Restaurant Corp. v. Sardie*
 755 F.2d 719 (9th Cir. 1985)......................................................................... 17, 18

*Smith v. Tobacco By-products and Chemical Corporation*
 243 F.2d 188 (Cust. & Pat. App. 1957) ........................................................... 8, 16

*Tom Doherty Associates v. Saban Entertainment*
 60 F.3d 27 (2nd Cir. 1995).................................................................................. 18

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*
 610 F.3d 1171 (9th Cir. 2010).............................................................................. 15

*Virginia Tech Foundation, Inc. v. Family Group, Limited V*
 666 F. Supp. 856 (W.D. Va. 1987) ...................................................................... 19

-iv-

*Winter v. NRDC, Inc.*
    555 U.S. 7 (2008) ............................................................................................. 5

**CALIFORNIA STATUTES**

Cal. Corp. Code § 1250 ........................................................................................... 5

**OTHER AUTHORITIES**

*McCarthy on Trademarks* § 18:3 ........................................................................... 20

*McCarthy on Trademarks* § 23:18 ......................................................................... 16

*McCarthy on Trademarks* § 23:44 ........................................................................... 7

*McCarthy on Trademarks* § 23:45 ........................................................................... 7

*McCarthy on Trademarks* § 30:52 ......................................................................... 19

*McCarthy on Trademarks* § 23:48 ........................................................................... 7

1

**INTRODUCTION**

Plaintiff iCall, Inc. (hereafter "Plaintiff") seeks a broad preliminary injunction to restrain Defendant Tribair, Inc. and Defendant Eric Reiher (hereafter "Defendants") from using the mark "WiCall," the title of Defendants' VoIP service and corresponding software.  Defendants' product is available for download from the online databases iTunes and Google's Android Market. Declaration of Eric Reiher in Opposition to Motion for Preliminary Injunction ¶4 (Hereafter "Reiher Decl.").  An analysis of the factors for confusion listed in *AMF v. Sleekcraft* shows no likelihood of consumer confusion between WiCall and Plaintiff's product iCall, and the unfair harm Defendants would suffer under the proposed preliminary injunction is far greater than the harm Plaintiff faces if the injunction is denied.  A court in the Northern District already has rejected Plaintiff iCall's motion for a preliminary injunction in a case where Plaintiff made nearly identical arguments.  *See* Request for Judicial Notice in Support of Opposition to Plaintiff's Motion for Preliminary Injunction (hereafter "Request for Judicial Notice") ¶7, Exhibit G (Order Denying Plaintiff's Motion for Preliminary Injunction (hereafter "Order Denying Preliminary Injunction"),  *iCall, Inc. v. Reliance Communications Ltd., et al.*, No. 10-cv-02206-JW (N.D. Cal., filed Sept. 16, 2010)).

**STATEMENT OF FACTS**

**I.    "ICALL" IS USED BY COMPANIES OTHER THAN PLAINTIFF AND IS DESCRIPTIVE OF THE SERVICE PLAINTIFF PROVIDES.**

Plaintiff's mark "iCall" is not used exclusively by Plaintiff.  Indeed, the term refers to more than a dozen commercial uses, all of which are related to calling services.[1]  In addition, the product iCall could adequately describe over a thousand products that offer similar VoIP services to Plaintiff's service. Reiher Decl. ¶9.[2]

---

[1] iCallDialer (icalldialer.com); Icallhere.com; icallglobal.com; iCall My World &iCall USA (Phone cards); iCall Centre (iopen.co.za); iCall Prepaid (www.stinternationalcards.com/spanish/Details.asp?Product=4096); iCall Manager (icallmanager.com); iCallFree (icallfree.com.ar); icall.ge, icallinsurance.com; iCall Solutions (icall.com.sg); iCallServices.com.  Applications include iCallDialer; iCallDialerLite; I Call You; EasiCall; iCallShotgun; Ashneh Icall. Reiher Decl. ¶18.

[2] Competitors include KakaoTalk, Skype, Talkatone, Viber, WeChat, Nimbuzz, Fring, Google Voice. Reiher Decl. ¶9.

1    Customers use Plaintiff's product literally to call people, turning their connection to the

2    Internet into a substitute for traditional telephone services.  Essentially, the "Call" component of

3    Plaintiff's mark describes how the consumer uses the product.

4    Plaintiff's mark also contains a lower case "i" which has been used by many companies,

5    especially Apple, Inc. to signify trendy technological gadgets and services.[3]  As the "i" has come

6    to signify easy-to-use technology for the general public, it can hardly be said to create an

7    association with Plaintiff's company.  Possibly, "i" refers to the personal pronoun indicating that

8    the product is personalized for the user or set to the user's specifications.

9    **II.    THE    MARK    WICALL    HAS    NOT    CAUSED    CONFUSION    AMONG**
     **CONSUMERS.**
10

11    Defendants began using the mark WiCall in January 2012 to identify its newly launched

12    software available on iTunes App Store[4] and Google Play.[5]  The software, when installed on a

13    mobile device, allows the customer to purchase credits and make telephone calls using the

14    Internet in lieu of traditional telephone lines or cell phone towers.  Reiher Decl. ¶¶5, 7.

15    Defendants chose the mark WiCall because it is short and describes the product.  Reiher

16    Decl. ¶3.  "Call" describes what the software enables the customer to do, and "Wi" is an

17    abbreviation for Wi-Fi, suggesting that the customer can make calls over a wireless internet

18    connection.  Reiher Decl. ¶3. This meaning is evidenced by Defendants' logo as shown on the

19    iTunes store (left). Plaintiff's company logo (right), suggests several different services on a three-

20    dimensional cube:

21

22

23

24
     _____
     [3] Apple has registered the following trademarks with the "i" prefix: iBook, iBook, iCal, iChat, iDVD, iFrame Logo,
25    iLife, iMac, iMessage, iMovie, iPad, iPhone, iPhoto, iPod, iPod classic, iPod Hi-Fi, iPod nano, iPod shuffle, iPod
     Socks, iPod touch, iSight, iTunes, iTunes Logo, iTunes Pass, iTunes U, iWeb, and  iWork. Apple Legal.  Request for
26    Judicial Notice, ¶8 Exhibit H.  In addition, Apple Corporation, Inc. has been granted the following service marks:
     iAd, iBookstore, iCloud, iDisk, iMix, iTunes Store. *Id.*

27    [4] itunes.com

28    [5] play.google.com/store

-2-

1

2

3

4

5

6



*WiCall*                                                                                          *iCall*

7

8    Reiher Decl. ¶¶19, 20.

9          At no time did the Defendants intend to use WiCall to deceive customers or even consider

10   that customers could be confused.  Reiher Decl. ¶3.  A company wishing to misappropriate iCall's

11   goodwill would have selected a logo with much greater similarity to Plaintiff's logo.

12         Upon an entry of the term "iCall" into Google's Internet search engine, no reference to

13   WiCall appeared in any of the first 10 pages he searched.  Reiher Decl. ¶17, Exhibit F.  WiCall is

14   available on iTunes App Store and Google Play but only as a result of the sites' search functions.

15   Reiher Decl. ¶11.

16         In addition, the two services are not identical.  Plaintiff's product provides "Free Phone

17   Calls +Text."  Reiher Decl. ¶8 Exhibit A.  Defendants only offer "Cheap VoIP Phone Calls."

18   Reiher Decl. ¶4.  A consumer looking for the video chat or text message features of iCall would

19   quickly find that Defendants' product does not provide those services.  On the service that

20   Defendants do provide, VoIP calls, the consumer would find that Defendants do not offer the

21   "Free Calls" advertised by Plaintiff.  Reiher Decl. ¶8, Exhibit A.

22   **III.    GRANTING THE PRELIMINARY INJUNCTION WOULD CAUSE GREAT**
     **         HARM TO DEFENDANTS.**
23

24         Defendants have used WiCall as the name of its product since its inception.  Defendants

25   have invested over $750,000 in developing WiCall and its technology.  If enjoined from using

26   WiCall, the change in name would drop WiCall out of the top results for relevant name searches,

27   resulting in fewer downloads and fewer paying customers.  Reiher Decl. ¶¶14-16.  It would start

28

1   from square one in a highly competitive market where climbing the ranks of applications is a long

2   and difficult process. Reiher Decl. ¶¶15-16.

3   **IV.   PLAINTIFF RECEIVED THE MARK "ICALL" BY ASSIGNMENT IN GROSS.**

4          Plaintiff claims ownership of U.S. Trademark Registration No. 2,194,066 (the "iCall

5   Registration"). The iCall Registration was originally filed in 1998 to The Wyatt Williams and

6   Joel Libove Partnership d/b/a iCall.  Request for Judicial Notice In Support of Opposition to

7   Plaintiff's Motion for Preliminary Injunction (hereafter "Request for Judicial Notice") ¶1 Exhibit

8   A.  In approximately March of 2000, the Partnership transferred ownership of the mark to John

9   Dahl, but without transferring the business and goodwill connected and symbolized by the mark.

10  Request for Judicial Notice In Support of Opposition to Plaintiff's Motion for Preliminary

11  Injunction. Request for Judicial Notice ¶¶1-2.  This scenario replayed on September 1, 2004, and

12  August 27, 2004.  Request for Judicial Notice ¶¶3-4.  In each of these purported transfers of the

13  iCall mark, there was no transfer of the underlying business assets or goodwill symbolized by the

14  mark.

15                      **STATEMENT OF ISSUES TO BE DECIDED**

16         The global issue is whether Plaintiff has met its burden to show that a preliminary

17  injunction is necessary to protect its trademark.  To show this, Plaintiff must show that there is a

18  likelihood of success on the merits, that Plaintiff is likely to suffer irreparable harm, the balance

19  of equities tips in Plaintiff's favor, and the injunction would serve the public interest.  *Alliance for*

20  *the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131 (9th Cir. 2011).  Since one of the factors for a

21  preliminary injunction is a likelihood of success on the merits, the court must consider whether

22  Plaintiff has made a strong showing that Plaintiff will win its trademark claims.

23                              **ARGUMENT**

24  **I.    THE LEGAL STANDARD FOR A PRELIMINARY INJUNCTION.**

25         The four factors for the court to consider in whether to issue an injunction are: (1) the

26  plaintiff is likely to suffer irreparable harm if the relief is not granted; (2) the likelihood of harm

27  to the defendants if the relief is granted; (3) the plaintiff's likelihood of success on the merits of

28  the case; and (4) the weight of public interest.  *Merrill Lynch v. Bradley*, 756 F.2d 1048, 1054

                                    -4-

(4th Cir. 1985); *Winter v. NRDC, Inc.* 555 U.S. 7, 20 (2008).  These are considered on a "sliding scale,"  meaning that a strong showing on one factor can compensate for a weak showing on another factor.  *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131 (9th Cir. 2001).

Courts do not grant preliminary injunctions lightly: "A preliminary injunction is an extraordinary remedy never awarded as a right." *Winter v. NRDC, Inc.* 555 U.S. 7, 9 (2008).  Indeed a preliminary injunction requires a "'clear showing" that plaintiffs are entitled to the relief." *Id.*

## II.   APPLYING CALIFORNIA COUNTERFEIT LAWS TO THIS CASE IS INAPPRORIATE BECAUSE WICALL IS NOT COUNTERFEITING.

Plaintiff cites California's Business and Corporations Code to demand that defendants' use of the WiCall mark be enjoined.  However, the code section cited, section 14250, is intended for "counterfeit goods," not goods that are merely allegedly infringing.

Setting aside the infringement claim, Plaintiff fails to explain why Defendants' actions constitute counterfeiting.  Despite Plaintiff's allegations, Defendants had no intent to deceive consumers when Defendants selected "WiCall" as a service mark, and the two marks are neither identical nor substantially indistinguishable.  Reiher Decl. ¶3.

Defendants never intended to confuse customers with its selection of WiCall as its service mark.  Reiher Decl. ¶3.  Indeed, Reiher had never considered iCall a leading competitor of WiCall, instead believing Skype and a number of others to be more severe obstacles in growing Tribair.  Reiher Decl. ¶9.

## III.   THE INTERNET TROIKA DOES NOT APPLY BECAUSE WICALL DOES NOT ADVERTISE ONLINE.

The test for consumer confusion was set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979). The *Sleekcraft* opinion suggests eight factors for courts to consider when they analyze the likelihood of consumer confusion.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).  Plaintiff assumes that because WiCall uses the Internet to operate its service, it is necessarily "in the internet context" which would prioritize three factors over the remaining five.

1    Plaintiff's Motion at 8. However, they list no test or factors explaining why the WiCall mark is "in
2    the internet context."

3          The basis for focusing on the Internet troika is that "Web surfers are more likely to be
4    confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store
5    would be. . ." *Brookfield Comm'ns, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1057
6    (9th Cir. 1999).  The application of the Internet troika has been limited to cases where a defendant
7    owns a website.  *For e.g. Brookfield Comm'ns, Inc. v. West Coast Entertainment Corp.*, 174 F.3d
8    1036 (9th Cir. 1999); *GoTo.com Inc. v. The Walt Disney Company*, 202 F.3d 1199 (9th Cir.
9    2000); *Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165 (9th Cir. 2007); *Jupiter Hosting, Inc. v.
10   Juptiermedia Corp.*, 76 U.S.P.Q.2d 1042 (N.D. Cal. 2004).

11         Unlike iCall, WiCall does not have a website.  Reiher Decl. ¶11.  WiCall does not pay for
12   advertising on the Internet.  Reiher Decl. ¶11.  WiCall is *available* at the website Google Play,
13   but it only comes up as a result after the customer has entered search terms into Google Play's
14   search function.  Reiher Decl. ¶11.  To search for WiCall from Apple's iTunes, the consumer
15   must already have downloaded iTunes software to her computer, then the search browses through
16   Apple's exclusive library of applications.

17         In an age where most businesses have corresponding websites and national businesses
18   routinely use online sales, Plaintiff asks that the court apply this Internet troika to every single
19   company whose product is sold over the Internet.  Taken to its logical conclusion, this argument
20   would effectively eliminate the remaining five *Sleekcraft* factors.

21         Even in cases within the "Internet context," courts have put the controlling troika doctrine
22   in proportion.  Even if the troika factors "tilt generally in [the moving party's] favor, that initial
23   inference of potential or probable confusion is not determinative." *Jupiter Hosting, Inc. v.
24   Juptiermedia Corp.*, 76 U.S.P.Q. 2d 1042 (N.D. Cal. 2004), *citing Halo Mgmt, LLC v. Interland,
25   Inc.*, 308 F. Supp. 2d 1019, 1036 (N.D. Cal. 2003).  Therefore, even if the case at bar falls into the
26   Internet troika doctrine as Plaintiff proposes, those three factors are not dispositive of the case and
27   Plaintiff must adequately address all of them in order to show that it is likely to win on the merits
28   of the case.

1   Because Defendants have no website for WiCall, the rationale for the Internet troika does

2   not apply to this case and minimizing the value of the remaining five *Sleekcraft* factors would

3   constitute a misinterpretation of caselaw.  Instead, the *Sleekcraft* factors should be applied more

4   traditionally, with each factor weighed in proportion to its bearing on the likelihood of consumer

5   confusion.

## IV.   THERE IS NO LIKELIHOOD OF CONFUSION ON THE TRADEMARK CLAIMS.

One of the factors for a preliminary injunction is the moving party's likelihood of success on the merits.  In the case at bar, Plaintiff has brought trademark infringement claims under federal and state law, and unfair competition claims under state law.  But since Plaintiff is unlikely to succeed on the merits of its claims, the factor weighs against Plaintiff.

The eight *Sleekcraft* factors must be given weight rational to their purpose, which is to inform the court of the likelihood of confusion by consumers.  If the court finds this case to be within the "internet context," it will value the first three factors more heavily, but in no case should it ignore the final five factors.

### A.   WiCall And iCall Have Different Sights, Sounds And Meanings, And Incorporation Of Plaintiff's Mark Into Defendant's Mark Does Not Show Infringement.

Ultimately, the Plaintiff must show that "the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Hasbro, Inc., v. Clue Computing, Inc.*, 66 F.Supp.2d 117, 124 (D. Mass. 1999) , citing *International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 204 (1st Cir. 1996).

When there are two or more components of a mark, the court may focus its analysis on the more distinctive component (the "dominant" component), and give less attention to the generic or descriptive component that is descriptive, highly suggestive or in use by other competitors. McCarthy on Trademarks, §§23:44, 23:45, 23:48.  It is rational for the court to give more weight to a particular feature of a mark and less weight to the non-dominant components.  It is also

1  rational to focus on components of a mark that will have a greater impact on the ordinary buyer.

2  *Luiginio's, Inc. v. Soutffer Corp.* 170 F.3d 827, 830 (8th Cir. 1999).

3      Indeed, this analysis of separate components of a mark can diminish the effect of

4  similarities in competing marks:

5          It has frequently been held that trademarks, comprising two words
           or a compound word, are not confusingly similar even though they
6          have in common one word or part which is descriptive or
           suggestive of the nature of the goods to which the marks are
7          applied, or of the use to which such goods are to be put.

8  *Smith v. Tobacco By-products and Chemical Corporation*, 243 F.2d 188, 189-190 (Cust. & Pat.

9  App. 1957).  Based on this rule, the court should consider the weakness of each component of the

10  mark iCall before comparing its similarities and differences with WiCall.

11      1.   WiCall Abbreviates "Wireless Calling" Which Gives Defendants' Mark A
            Substantially Different Meaning Than iCall.
12

13      A showing of similarity is weak when each mark has a different meaning.  For example,

14  GREEN LEAF for a plant spray connotes cultivation and BLACK LEAF suggests something

15  entirely different. *Smith v. Tobacco By-Products & Chemical Corp.*, 243 F.2d 188, 190 (Cust. &

16  Pat. App. 1957).  Although phonetically similar, the distinguishable meanings made the marks

17  dissimilar under the test for infringement.  *Id.* at 189.  The "leaf" component was commonly used

18  to mark plant sprays of all sorts, so the specific meaning of the mark was derived from the color

19  preceding the word. *Id.*

20      When the common element of competing marks is a word that is weak by trademark

21  standards, then there is a low likelihood of confusion.  *Id.* at 189.  Both Plaintiff and Defendants

22  have incorporated "Call" into their respective marks. For both marks, "Call" is a generic or

23  descriptive component of the mark because its customers literally call acquaintances using the

24  WiCall and iCall services.  Because each mark incorporates the generic "Call," the court should

25  divide each mark into components and place its primary analysis on the prefixes "i" versus "Wi."

26      Plaintiff argues that "iCall" is suggestive, but certainly would concede that the "Call"

27  portion of its mark is generic to describe VoIP services.  Taking the generic component out of the

28

-8-

comparison, "Wi" is quite distinguishable from "i" in meaning. "Wi" is an abbreviation for "Wi-Fi," which is the form of Internet connection used by many of WiCall's customers.

In meaning, "i" describes a trendy device or program, often associated with Apple products. "Wi" is an abbreviation for "wireless," as in "wi-fi" to describe a wireless internet connection. Reiher Decl. ¶3.

### 2. WiCall Is Phonetically Different From iCall.

Variations of even a single letter can cause a sufficient distinction in sound. *Lever Bros. Co. v. Babson Bros. Co.*, 197 F.2d 531, 534 (Cust. & Pat. App. 1952) ("Surf" and "Surge"); *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*, 505 F.2d 719 (Cust. & Pat. App. 1974) ("Duvet" and "Duet").

Phonetically, "i" sounds like the personal pronoun "I", and "Wi" sounds like the question "why." There are two factors that emphasize the difference between the two marks. First, the emphasized syllable in pronunciation is the prefix, not the generic "Call." This emphasis in pronunciation of the dominant components increases the phonetic difference.

Second, the fact that both marks are very short makes each letter more important relative to the whole. *See Lever Bros. Co. v. Babson Bros. Co*., 197 F.2d 531, 534 (Cust & Pat. App. 1952) ("Surf" and "Surge"); *National Distillers and Chemical Corp. v. William Grant & Sons, Inc*. 505 F.2d 719 (Cust. & Pat. App. 1974) ("Duvet" and "Duet").

Plaintiff has selected a mark that is two syllables and only five letters, with each syllables being in regular conversational use. Given the simplicity of the pronunciation, consumers are able to identify the variation.

Finally, in the realm of technology, terminology is becoming increasingly abbreviated and distinctions between words often hinge on slight phonetic variations. As such, consumers are sensitive to exact pronunciations of technical terms.

### 3. WiCall Is Visually Different From iCall.

Visually, "Wi" has an imposing W which differentiates it from the subtle "i". On print, a consumer has ample time to review a word for its spelling. And the difference in spelling between Defendants' and Plaintiff's marks is not hidden within the word, but prominently

-9-

displayed at the front of the word. That distinction itself should be sufficient to distinguish the two words.

In addition, Plaintiff's logo is markedly different from Defendants' logo in appearance.  In the iTunes and the Android Market stores, the logo is always displayed in close proximity to the software's name.  Reiher Decl. ¶17.  The logos of Plaintiff and Defendants are entirely different and their presence on iTunes and the Android Market dissipate any alleged confusion that hypothetically comes from similar names.

                    4.       The Coincidence That iCall Is Incorporated Into WiCall Does Not Weigh Against Defendant.

Plaintiff cites *PerfumeBay* to show that incorporation of a senior mark in a junior mark should constitute infringement.  However Plaintiff's analysis ignores the court's emphasis on the fact that eBay's case was so compelling because of eBay's strong, suggestive mark:  "Although differences exist between the two marks, the fact that eBay's mark is a strong one weighs against *PerfumeBay*."  *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007).  Part of the reason eBay's mark was so strong was that "Bay" was an arbitrary or fanciful dominant component of the mark. While incorporation of a mark is evidence of similarity, it is certainly not dispositive and may not even be persuasive if the incorporation is of a weak suggestive or merely descriptive mark.

Plaintiff also relies heavily on *Maxim*, which compared the mark "iButton" with the infringing mark "My-iButton."  Plaintiff calls this case similar to the case at bar, but ignores several key distinctions.  First, "Button" was a strong suggestive mark because "Button" did not literally describe the product in question. In contrast, iCall is a weak mark because it is descriptive of how customers interact with the product.  Second, the addition of "My" to the plaintiff's mark did not change the meaning of the product.  *Maxim Integrated Products, Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1031-32 (N.D. Cal. 2009).  In fact, companies often add a "my" prefix to describe the user profile page of their websites. *See e.g.* www.my.yahoo.com; www.my.aol.com; www.my.icall.com.

-10-

1    In contrast, adding a "W" in front of a mark is unusual for the owner of a mark, and in this

2    case, the addition of the "W" completely changes the meaning of the mark.  Instead of the cliché

3    "i" which could refer to a family brand, the personal pronoun "I" or a generic reference to trendy

4    technology, Defendants have added the abbreviation "Wi" to the descriptive word call. In doing

5    so, the name references the wireless feature of Defendants' product.

6    A number of cases disprove Plaintiff's assertion that incorporation of Plaintiff's mark into

7    Defendants' mark is a nearly dispositive fact showing infringement.  For example, PARENTS

8    DIGEST was sufficiently distinct from PARENTS, even though both marks were for magazines.

9    *See Gruner + Jahr, USA v. Meredith Corp.*, 991 F.2d 1072 (2nd Cir. 1993).  A dress line called

10   COUNTRY VOGUES was sufficiently distinguishable from the fashion magazine VOGUE. *See*

11   *Conde Nast Publications, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404 (C.C.P.A 1975).

12   ROMANBURGER was dissimilar to ROMAN the cereal food.  *See Mr. Hero Sandwich Systems,*

13   *Inc. v. Roman Meal Company*, 781 F.2d 884 (Fed. Cir.  1986). In all of these cases, a mark that

14   was entirely incorporated into the mark of the moving party was found non-infringing.

15   Plaintiff has selected and used a descriptive mark that would foreseeably include the same

16   combination of letters as its competitors in the business of VoIP. There are currently 32 live

17   trademarks or service marks federally registered which incorporate "ICALL" in their marks.

18   Reiher Decl. ¶13  Exhibit C. Each registered mark has a prefix that ends with an "I" and the

19   letters "ICALL" coincidentally fall into sequence.  By Plaintiff's logic, every one of these

20   infringes the iCall trademark.

21   In another case, *iCall, Inc. v. Reliance Communications Ltd., et al.*, Plaintiff already failed

22   to prove infringement where a defendant incorporated the letters iCall.  Request for Judicial

23   Notice  ¶7, Exhibit G (Order Denying Preliminary Injunction,  *iCall, Inc. v. Reliance*

24   *Communications Ltd., et al.*, No. 10-cv-02206-JW (N.D. Cal., filed Sept. 16, 2010)). In that case,

25   Plaintiff sought a preliminary injunction against a company who was using the mark "Reliance

26   iCall," but Judge Ware denied the motion, saying "Plaintiff has not shown sufficient similarity

27   between the two marks to support its claim for a preliminary injunction."  *Id.* at 16.

28

-11-

1   **B.    The Services Offered By Plaintiff And Defendants Are Not Identical.**

2      Plaintiff claims that Plaintiff and Defendants offer the exact same service.  However, iCall

3   offers video and text messaging services that are not available with WiCall.  Reiher Decl. ¶6.

4   Even on the similar service, VoIP communication, Plaintiff prides itself on offering free phone

5   calls.  Reiher Decl. ¶8, Exhibit A.  Conversely, Defendants' WiCall advertises "cheap" phone

6   calls, at prices below the market rates for traditional international calls.  Reiher Decl. ¶¶7-8.  With

7   WiCall, the customers must purchase "credits" which then allow the customer to make the calls.

8   Reiher Decl. ¶7.

9      The free versus cheap distinction is important.  As a result of their advertising, iCall

10  customers expect to use the service for free.  If a consumer had stumbled upon WiCall's product

11  as a result of confusion, the consumer would realize the mistake when WiCall required the

12  purchase of credits.  Consumers searching for a VoIP service have a vision of what they want

13  from their application.  Plaintiff claims that the difference between the two products is nil.  But

14  for consumers that do not wish to purchase credits prior to their call, the difference becomes

15  immediately apparent.

16  **C.    Defendants Do Not Market On Traditional Internet Channels Because It Does
        Not Have A Website Or Use Website Advertising.**

17

18     As discussed before, Defendants and Plaintiff have different channels of advertising.

19  iCall has its own website.  WiCall does not.  Reiher Decl. ¶11.  Instead, WiCall is listed and

20  available on iTunes and Google's Android Market.  Reiher Decl. ¶¶3, 11.  When a user's directed

21  search for applications populate the page, the applications are accompanied by their distinctive

22  icons, a short description of the product, and in the case of the Android Market, the author of the

23  application. Reiher Decl. ¶17.  iTunes and Google's Android Market are the only avenues of

24  "advertising" that WiCall uses, and the formats of those databases lend themselves to clearing up

25  confusion, because the logo and the name of the author are concurrently displayed in the search

26  results.

27     A number of websites list WiCall's reviews.  However, these sites are owned by third

28  party companies that are not paid by WiCall to advertise the product.  Such websites list many

-12-

1   applications, including competitors of WiCall, and contain both positive and negative reviews.

2   The presence of competing applications and negative reviews show there could be no confusion

3   among consumers that third parties, and not the Defendant, own the websites.

      **D.**    **iCall Is A Weak Mark Because It Is Descriptive Or Highly Suggestive And
The Mark Is Already In Use In Commerce In Several Other Contexts.**

6         The marks that receive maximum trademark protection are "arbitrary" or "fanciful," while

7   weaker marks are "suggestive" and "descriptive."  A suggestive mark is one where the consumer

8   must use imagination or "multistage reasoning" to understand the significance of the mark.  A

9   merely descriptive mark directly describes the product or service.  *Entrepreneur Media v. Smith*,

10  279 F.3d 1135, 1142 (9th Cir. 2002) *citing Kendall-Jackson Winery*, 150 F.3d 1042, 1047 n. 8

11  (9th Cir. 1998).  Marks that lie in a competitive field are relatively weaker than marks in an

12  industry where the product or service offered is limited to a few companies. *Halo Mgmt. LLC v.*

13  *Interland, Inc*., 308 F. Supp. 2d 1019, 1036 (N.D. Cal. 2003).

14        The mark iCall lacks distinctiveness because the prefix "i" is dominated by Apple, Inc.

15  When a consumer sees the "i" prefix, she thinks first of Apple products, not products created by

16  Defendants or Plaintiff.  If any confusion were to occur among consumers, it would be that

17  consumers thought that iCall was associated with Apple and not with Plaintiff.

18        Alternatively, the "i" prefix has become so generic that it is associated with no company

19  that provides a good or service.  Companies mindlessly slap on the "i" prefix to make the product

20  or service sound hi-tech and easy to use.  The fact that Plaintiff predated the "i" phenomenon is

21  irrelevant—in the minds of consumers there is nothing distinctive about the prefix "i."

22  Accordingly, Plaintiff possesses registration on a mark that unimaginatively combines two

23  nondistinctive components in a way that has been done many times before.  Even if this is

24  sufficient to keep its registration, the strength of the total mark is low.

25        In addition, Plaintiff's claim of "exclusive use" is false.  The term iCall is widely used by

26  other companies offering calling services.[6]  Even if none of these uses rival Plaintiff's market

27  _____

28  [6] iCallDialer (icalldialer.com); Icallhere.com; icallglobal.com; iCall My World &iCall USA (Phone cards); iCall
Centre (iopen.co.za); iCall Prepaid (www.stinternationalcards.com/spanish/Details.asp?Product=4096); iCall

-13-

1  share, their existence and presence on the web indicate that consumers do not immediately

2  associate the mark iCall with Plaintiff's company.

3  More than 1000 applications offer VoIP services.  Reiher Decl. ¶16.  Plaintiff and

4  Defendants are in a field with many competitors, and thus the mark is relatively weaker than in a

5  field with only a few players. *Halo Mgmt. LLC v. Interland, Inc*., 308 F. Supp. 2d 1019, 1036

6  (N.D. Cal. 2003).

7  Plaintiff's mark "iCall" was already found weak in *iCall, Inc. v. Reliance Communications*

8  *Ltd., et al*.  Request for Judicial Notice ¶7, Exhibit G. (Order Denying Preliminary Injunction at

9  18, No. 10-cv-02206-JW (N.D. Cal., filed Sept. 16, 2010)).  In that case, the court found "that the

10  term iCall is in widespread use for similar goods and services. " *Id.* The court's conclusion on the

11  factor was "this factor does not weigh in Plaintiff's favor."  *Id.*  Other uses of iCall continue to

12  exist in the market for products similar to Plaintiff's.

13  As a result, Plaintiff has a mark that is weak. A weak mark is entitled to "a restricted range

14  of protection" or in the case of a generic mark, no protection at all.  *AMF Inc. v. Sleekcraft Boats*,

15  599 F.2d 341, 350-351 (9th Cir. 1979).  This factor weighs against Plaintiff.

16  **E.    Defendants Never Intended To Deceive Consumers Because Defendants Selected WiCall As Its Mark To Abbreviate "Wireless Calling."**

17

18  Plaintiff has argued that when a defendant uses a mark it knows to be similar to another

19  mark, the court may presume an intent to deceive.

20  But Plaintiff has selected and used a descriptive mark that would foreseeably include the

21  same combination of letters as its competitors in the VoIP industry. There are currently over 30

22  live trademarks or service marks federally registered which incorporate "ICALL" in their marks.

23  Reiher Decl. ¶13,  Exhibit C.  Each has a prefix that ends with an "I" and coincidentally the letters

24  "ICALL" fall into sequence.

25

26

27  Manager (icallmanager.com); iCallFree (icallfree.com.ar); icall.ge, icallinsurance.com; iCall Solutions (icall.com.sg);
iCallServices.com.  Applications include iCallDialer; iCallDialerLite; I Call You; EasiCall; iCallShotgun; Ashneh

28  Icall. Reiher Decl. ¶18.

-14-

"Wi" is an abbreviation of "Wi-Fi"," referring to the type of internet connection customers often use in conjunction with WiCall.  Reiher Decl. ¶3.  Defendants selected its mark using a common abbreviation and a descriptive word to market its product.  The abbreviation "Wi" carries an entirely different meaning from the prefix "i" in the minds of consumers.  Even after becoming aware of iCall's existence, Defendants knew that consumers would be able to differentiate between the drastically different meanings of the two marks.  Reiher Decl. ¶3.  There was no intent to deceive consumers, only an intent to describe its product in a concise, catchy name.  Reiher Decl. ¶3.

### F.    The Services Of Plaintiff And Defendants Are Not Identical.

Plaintiff offers a number of services through iCall, and WiCall only offers voice calling.  Reiher Decl. ¶6.  Plaintiff advertises heavily the fact that its calls are free.  Reiher Decl. ¶8, Exhibit A.  Defendants offer cheap VoIP calling, but except for a limited free trial, no calls are free.  Reiher Decl. ¶8.  A consumer seeking a free service will quickly find that Defendants do not provide such a service.  Although Plaintiff's service is similar to Defendants', they occupy different market niches.

### G.    Defendants' Consumers Exercise Adequate Care in Selecting their VoIP Provider.

The default consumer for the likelihood of confusion test is the "reasonable consumer of average intelligence." *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1202 (9th Cir. 1979).  However, some consumers are more discriminating than others.  *First Nat'l Bank v. First Nat'l Bank, South Dakota*, 153 F.3d 885 (8th Cir. 1998).  Furthermore, there is a trend that internet consumers are becoming increasingly more skilled in using the Internet and making associations between marks and products.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1178 (9th Cir. 2010) ("Consumers who use the internet for shopping are generally quite sophisticated about such matters and won't be fooled…just because the string of letters making up [a] trademark appears in the domain"); *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011).

-15-

The target consumer for both Plaintiff and Defendants is one who owns a smartphone and is willing to try some technical maneuvering to avoid expensive international or long-distance calling.  Such consumers know the difference between the abbreviation "Wi" and the prefix "i".  If they were confused what the "Wi" stood for, WiCall's icon, as found on Google's Android Market, incorporates the universal symbol for wireless internet.

   

On the left is WiCall's icon, and on the right is the Wi-Fi logo used by the Wi-Fi Alliance to signify compatibility according to certain standards for which Wi-Fi Alliance tests. Reiher Decl. ¶¶19, 21.

### H.   Plaintiff Lacks Evidence Of Actual Confusion Because There Is None, Which Weighs In Defendant's Favor.

When two marks are in concurrent use in commerce for a considerable time, the absence of evidence of actual confusion is evidence that there is no likelihood of confusion.  *McCarthy* §23:18; *Smith v. Tobacco By-Products and Chemical Corp.*, 243 F.2d 188, 190 (9th Cir. 1957).  As time goes on without evidence of actual confusion, this factor weighs more heavily against the party moving for the injunction.  *Id.*  Although actual confusion may not be necessary to obtain a preliminary injunction, Plaintiff must prove a likelihood of success on the merits to get the injunction.   Winning on the merits will be impossible if Plaintiff cannot give a plausible explanation of how consumers are confused by Defendants' mark.

WiCall was released on Apple's iTunes in January 2012.  Reiher Decl. ¶4.  Ten months since its release, Plaintiff has marshaled no facts showing evidence of actual consumer confusion.  WiCall was released on Google's Android Market in August, 2011.  More than a year later, Plaintiff has no evidence of actual confusion.

-16-

Furthermore, Plaintiff has failed to explain how a consumer would plausibly associate WiCall with the Plaintiff or leach off Plaintiff's goodwill.  A most basic example of consumer confusion would be a consumer who types in the name "iCall" to a search engine and receives results for "WiCall."  But when a consumer types in "iCall" to google.com, WiCall does not appear on the first ten pages of results. Reiher Decl. ¶17, Exhibit F.  In any case, confusion between the two would be fleeting because of the differences in the pricing structure and services offered become immediately apparent.

## V.   PLAINTIFF WILL NOT BE UNFAIRLY INJURED BY DENYING THE PRELIMINARY INJUNCTION.

Plaintiff has described its position as a pioneer in the VoIP service industry.  Plaintiff's Motion for Preliminary Injunction at 3.  Therefore, the financial threat to Plaintiff's business from Defendant's use of the WiCall name is low.  While its mark is weak because it is descriptive, Plaintiff's claims demonstrate a strong market position for Plaintiff. Plaintiff's Motion for Preliminary Injunction, p. 10.  Additionally, besides vague allegations that users mistakenly use WiCall instead of iCall, Plaintiff failed to allege facts showing that the presence of WiCall unfairly harms Plaintiff.

## VI.   DEFENDANTS WOULD BE SEVERELY AND IRREPARABLY HARMED BY THE PRELIMINARY INJUNCTION.

In seeking the preliminary injunction, Plaintiff has the burden of showing that the balance of equities tips sharply in Plaintiff's favor.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Plaintiff claims that the "balance of equities tips sharply in favor of Plaintiff" because Defendants will avoid injury through the release of a parallel product under an alternative name.

The case law supports the opposite conclusion: that a smaller, younger company still building recognition would be obliterated by a preliminary injunction prohibiting use of its mark, while the larger company could cope with minor identity problems for an extended period. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719 (9th Cir. 1985).  The fledgling company has made a proportionately high initial investment in order to build up name recognition which it

-17-

cannot quickly replicate for another mark due to a lack of capital. Indeed, "[a]lthough the relative size of the respective businesses is not a defense to a suit for a permanent injunction, it is certainly relevant to the potential hardship from changing a business' name. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719 (9th Cir. 1985).

### A.    Defendant's Service Is Already In Commerce.

WiCall had already been running for months by the time Plaintiff contested Defendants' use of the mark. Reiher Decl. ¶4. An injunction, therefore, even one filed simultaneously with the original complaint, would have required Defendants to take an active mark out of commerce, put it on the shelf, and watch customer loyalty dissipate while litigation dragged on. Reiher Decl. ¶¶14-16.

### B.    Plaintiff's Demands Would Ruin Customer Loyalty By Making Defendant's Product Unrecognizable To Customers.

Plaintiffs' motion to enjoin the use of WiCall was brought in October, 2012, nine months since the release of WiCall. In that period, the WiCall mark has gained customer loyalty and has achieved secondary meaning. To grant the injunction would squash the gains already made by Defendants, and Defendants would essentially lose all value invested in the WiCall mark. Reiher Decl. ¶¶15-16.

The preliminary injunction requested by Plaintiff would require Defendants to identify their VoIP service by a different name. Plaintiff has placed great emphasis on the value of the name, and should therefore understand the harm caused by losing access to that name. Defendants would essentially lose all customer loyalty to WiCall, with devastating financial effects on the company.

### C.    A Preliminary Injunction Would Disrupt The Status Quo.

The fact that a preliminary injunction would disrupt the status quo is a factor against the moving party in the balance of hardships. Where the ruling on the preliminary injunction would require costly remedial steps to return to the status quo, or where the injunction would grant the moving party substantially all of its remedies, courts "have required the movant to meet a higher standard." *Tom Doherty Associates v. Saban Entertainment*, 60 F.3d 27, 34 (2nd Cir. 1995); *see*

-18-

1  *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F. Supp. 1210 (N.D. Cal. 1969); *see*

2  *also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009).

3  Where a plaintiff sought to enjoin a radio station from using specific call letters, the court denied

4  the motion "because it would be highly unlikely that the Defendant would or could change back

5  to its original call letters once it had been forced to abandon them." *Virginia Tech Foundation,*

6  *Inc. v. Family Group, Limited V*, 666 F. Supp. 856, 860 (W.D. Va. 1987).

7  Plaintiff asks for a mandatory preliminary injunction which would require Defendants to

8  remove all references to WiCall in the App Store or on the Internet. This would require an

9  affirmative and costly action by Defendants to withdraw its product from every means of

10  generating revenue, pending litigation of this case. Litigation and an appeal could take years. If

11  forced to abandon its product until the case is resolved, Defendants would lose all customer

12  loyalty associated with WiCall and there would be no advantage of returning to the mark at the

13  conclusion of trial. A victory on the merits by Defendants would be hollow.

14  **VII.   PUBLIC POLICY WEIGHS IN FAVOR OF DENYING THE PRELIMINARY**
        **INJUNCTION.**

15

16  The factor of public policy in trademark cases is a balancing act between the danger of

17  consumer confusion by denying the injunction, and the danger of anti-competitive effects by

18  granting the injunction. McCarthy on Trademarks §30:52. As illustrated in the arguments above,

19  the likelihood of confusion between iCall and WiCall is low or non-existent, meaning that the

20  public benefit of granting the injunction is correspondingly low. In contrast, letting iCall

21  eliminate its competition in the courtroom rather than in the free market is detestable to the public

22  interest of consumers' freedom of choice.

23  **VIII.  THE FEDERAL SERVICE MARK ICALL WAS ASSIGNED WITHOUT A**
        **TRANSFER OF THE UNDERLYING BUSINESS, AND HAS THEREFORE BEEN**
24      **ABANDONED.**

25  A sale of a trade name or mark divorced from its goodwill is characterized as an

26  "assignment in gross." *Marshak v. Green*, 746 F.2d 927, 929 (2nd Cir., 1984). Courts have held

27  that registered trade names or marks may not be validly assigned in gross. *Id.*

28

1     Public policy is against assignments in gross because selling a product or service under a

2  mark that has been used for another product or service is essentially "fraud on the purchasing

3  public." *Marshak v. Green*, 746 F.2d 927, 929 (2nd Cir., 1984).

4     In the absence of documentary evidence of an assignment of the business or goodwill

5  associated with the mark to be transferred, the new owner of the mark must present "clear and

6  uncontradicted oral testimony of a person to have actual knowledge." *McCarthy on Trademarks*

7  §18:3. No such testimony is presented here.

8     The USPTO has recorded that the iCall mark was assigned to new owners in 2000, 2004,

9  and 2008. *See* Request for Judicial Notice ¶¶1-5. However, none of these assignments included

10  the goodwill of the business connected with the use of and symbolized by the mark.  Without

11  evidence that the parties transferred business assets, expertise or other types of good will in

12  conjunction with the assignment, Plaintiff has been fraudulently capitalizing on the good will of

13  the prior owners' marks at the consumer's expense.  Because the iCall mark was not validly

14  assigned and Plaintiffs fail to offer adequate proof of a valid registration, Plaintiff has no grounds

15  to bring a claim for relief for infringement of a registered mark against Defendant.

16                              **CONCLUSION**

17     Plaintiff has failed to meet its burden of showing that it is likely to win on the merits, and

18  in fact its case for showing a likelihood of confusion is quite weak.  Plaintiff has grossly

19  understated the harms that the injunction would cause to Defendants, and has exaggerated the

20  harm that Plaintiff would suffer if the injunction was denied.  For these reasons, the court should

21  deny Plaintiff's motion for a preliminary injunction.

22  Dated:  October 26, 2012            DONAHUE GALLAGHER WOODS LLP

23

24                              By: _____

25                                 John C. Kirke
                                  Attorneys for Defendants
26                                 TRIBAIR, INC. and ERIC REIHER

27

28

-20-