1  JOHN C. KIRKE, BAR NO. 175055
   johnk@donahue.com
2  ANDREW S. MACKAY, BAR NO. 197074
   andrew@donahue.com
3  SOPHIA E. C. SCHWARTZ, BAR NO. 272915
   sophia@donahue.com
4  DONAHUE GALLAGHER WOODS LLP
   Attorneys at Law
5  1999 Harrison Street, 25th Floor
   Oakland, California  94612-3520
6  P.O. Box 12979
   Oakland, California  94604-2979
7  Telephone:     (510) 451-0544
   Facsimile:     (510) 832-1486
8
   Attorneys for Defendants
9  TRIBAIR, INC. and ERIC REIHER

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13
   ICALL, INC.,                              Case No.  CV 12 2406
14
                  Plaintiff,                 **REQUEST FOR JUDICIAL NOTICE IN**
15                                            **SUPPORT OF OPPOSITION TO**
           v.                                 **PLAINTIFF'S MOTION FOR**
16                                            **PRELIMINARY INJUNCTION**

   TRIBAIR, INC., ERIC REIHER and            Date:        November 15, 2012
17 DOES 1-5,                                 Time:        1:30 p.m.
                                             Ctrm:        5, 17th Floor
18                Defendants.                Judge:       Hon. Edward M. Chen

19 ─────────────────────────────────

   AND RELATED COUNTERCLAIM.
20

21

22

23

24

25

26

27

28

1      Defendants Tribair, Inc. and Eric Reiher hereby request the Court to take judicial notice

2 pursuant to Federal Rule of Evidence 201 of the facts listed below. *Metro Pub. v. San Jose*

3 *Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993) (a court may take judicial notice of certified

4 copies of trademark registrations from the principal register); *Denius v. Dunlap*, 330 F.3d 919,

5 926 (7th Cir. 2003) (a court may take judicial notice of information on a government agency's

6 website). A court may take judicial notice of "matters of public record." *Mack v. South Bay Beer*

7 *Distributors, Inc.,* 798 F. 2d 1279 (9th Cir. 1986). Finally, courts may take judicial notice of facts

8 not subject to reasonable dispute because they "can be accurately and readily determined from

9 sources whose accuracy cannot be reasonably questioned." Fed. R. Ev. 201(b).

10     (1)    Application for Trademark Assignment, recorded Feburary 12, 2000 by the United

11 States Patent and Trademark Office, a true and correct copy of which is attached hereto as

12 **Exhibit A**;

13     (2)    Application for Trademark Assignment, recorded February 23, 2000 by the United

14 States Patent and Trademark Office, a true and correct copy of which is attached hereto as

15 **Exhibit B**;

16     (3)    Application for Trademark Assignment, recorded August 27, 2004 by the United

17 States Patent and Trademark Office, a true and correct copy of which is attached hereto as

18 **Exhibit C**;

19     (4)    Application for Trademark Assignment, received August 27, 2004 by the United

20 States Patent and Trademark Office, a true and correct copy of which is attached hereto as

21 **Exhibit D**;

22     (5)    Application for Trademark Assignment, received March 7, 2008 by the United

23 States Patent and Trademark Office, a true and correct copy of which is attached hereto as

24 **Exhibit E**;

25     (6)    Submission of documentation for Trademark Assignment, executed November 24,

26 2009 by John Mackel and  received by the United States Patent and Trademark Office, a true and

27 correct copy of which is attached hereto as **Exhibit F**;

28     (7)    Order Denying Defendants' Motion to Transfer; Granting in Part and Denying in

Part Defendants' Motion to Dismiss; Denying Plaintiff's Motion for Preliminary Injunction, *iCall, Inc. v. Reliance Communications Ltd., et al.,* Case No. C 10-02206JW, United States District Court for the Northern District of California, September 16, 2010, a true and correct copy of which is attached hereto as **Exhibit G.**

(8) Website of Apple, Inc.'s legal department, http://apple.com/legal/trademark/appletmlist.html, listing its current trademarks, including iBook, iBook, iCal, iChat, iDVD, iFrame Logo, iLife, iMac, iMessage, iMovie, iPad, iPhone, iPhoto, iPod, iPod classic, iPod Hi-Fi, iPod nano, iPod shuffle, iPod Socks, iPod touch, iSight, iTunes, iTunes Logo, iTunes Pass, iTunes U, iWeb, and iWork. Apple Legal, iAd, iBookstore, iCloud, iDisk, iMix, iTunes Store, a true and correct copy of the website is attached hereto as **Exhibit H.**

Dated: October 26, 2012                    DONAHUE GALLAGHER WOODS LLP


                                           By: _____
                                               John C. Kirke
                                               Attorneys for Defendants
                                               TRIBAIR, INC. AND ERIC REIHER

-1-

# EXHIBIT A

# Trademark Assignment Details

**Reel/Frame:** 2037 / 0285          View Recorded Assignment 📅                          **Pages:** 4
**Received:** 03/22/2000                                    **Recorded:** 02/12/2000
**Conveyance:** ASSIGNS THE ENTIRE INTEREST

## Total properties: 1

1     **Serial #:** 75098581          **Filing Dt:** 05/03/1996          **Reg #:** 2194066          **Reg. Dt:** 10/06/1998
       **Mark:** ICALL

## Assignor

1   WYATT WILLIAMS AND JOEL LIBOVE PARTNERSHIP, THE, D/B/A ICALL

                                                                        **Exec Dt:** 01/20/2000
                                                                        **Entity Type:** GENERAL PARTNERSHIP
                                                                        **Citizenship:** SOUTH CAROLINA

## Assignee

1   JOHN DAHL
     P.O. BOX 10058                                                     **Entity Type:** INDIVIDUAL
     NEWPORT BEACH, CALIFORNIA 92658                                    **Citizenship:** CALIFORNIA

## Correspondence name and address

MALCOLM B. WITTENBERG
P.O. BOX 7936
FOUR EMBARCADERO CENTER, SUITE 1900
SAN FRANCISCO, CA 94120-7936

Search Results as of: 09/16/2010 02:17 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350.
Web interface last modified: October 16, 2008 v.2.0.1

**02-12-2000**

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #67

**03-22-2000**



**101292375**

U.S. Department of Commerce
Patent and Trademark Office
**TRADEMARK**

## RECORDATION FORM COVER SHEET
## TRADEMARKS ONLY

TO: The Commissioner of Patents and Trademarks: Please record the attached original document(s) or copy(ies).

| Submission Type | Conveyance Type |
|---|---|

**Submission Type**

- ☒ New
- ☐ Resubmission (Non-Recordation) Document ID# [_____]
- ☐ Correction of PTO Error Reel # [____] Frame # [____]
- ☐ Corrective Document Reel # [____] Frame # [____]

**Conveyance Type**

- ☒ Assignment
- ☐ Security Agreement
- ☐ Merger
- ☐ Change of Name
- ☐ Other [23497.00010]

- ☐ License
- ☐ Nunc Pro Tunc Assignment

Effective Date
Month Day Year
[01/20/00]

### Conveying Party

☐ Mark if additional names of conveying parties attached

Name [The Wyatt Williams and Joel Libove Partnership, D/B/A ICALL]

Formerly [_____]

Execution Date
Month Day Year
[01/20/00]

☐ Individual  ☒ General Partnership  ☐ Limited Partnership  ☐ Corporation  ☐ Association

☐ Other [_____]

☐ Citizenship/State of Incorporation/Organization [South Carolina]

### Receiving Party

☐ Mark if additional names of receiving parties attached

Name [John Dahl]

DBA/AKA/TA [_____]

Address (line 1) [P.O. Box 10058]

Address (line 2) [_____]

Address (line 3) [Newport Beach] [California] [92658]
           City               State/Country         Zip Code

☒ Individual  ☐ General Partnership  ☐ Limited Partnership

☐ Corporation  ☐ Association

☐ Other [_____]

If document to be recorded is an assignment and the receiving party is not domiciled in the United States, an appointment of a domestic representative is attached. *(Designation must be a separate document from Assignment.)*

☐ Citizenship/State of Incorporation/Organization [California]

03/20/2000 DNGUYEN 00000129 033821 2194066

01 FC:481      40.00 CH

**FOR OFFICE USE ONLY**

Public burden reporting for this collection of information is estimated to average approximately 30 minutes per Cover Sheet to be recorded, including time for reviewing the document and gathering the data needed to complete the Cover Sheet. Send comments regarding this burden estimate to the U.S. Patent and Trademark Office, Chief Information Officer, Washington, D.C. 20231 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Paperwork Reduction Project (0651-0027), Washington, D.C. 20503. See OMB Information Collection Budget Package 0651-0027, Patent and Trademark Assignment Practice. DO NOT SEND REQUESTS TO RECORD ASSIGNMENT DOCUMENTS TO THIS ADDRESS.

**Mail documents to be recorded with required cover sheet(s) information to:**
**Commissioner of Patents and Trademarks, Box Assignments, Washington, D.C. 20231**

TRADEMARK

FORM PTO-1618B
Expires 06/30/99
OMB 0651-0027

**Page 2**

U.S. Department of Commerce
Patent and Trademark Office
**TRADEMARK**

## Domestic Representative Name and Address

Enter for the first Receiving Party only.

Name: Malcolm B. Wittenberg

Address (line 1): Crosby, Heafey, Roach & May

Address (line 2): P.O. Box 7936

Address (line 3): Four Embarcadero Center, Suite 1900

Address (line 4): San Francisco, CA 94120-7936

## Correspondent Name and Address

Area Code and Telephone Number: 415  543-8700

Name: Malcolm B. Wittenberg

Address (line 1): P.O. Box 7936

Address (line 2): Four Embarcadero Center, Suite 1900

Address (line 3): San Francisco, CA 94120-7936

Address (line 4):

**Pages**   Enter the total number of pages of the attached conveyance document including any attachments.   # 2

## Trademark Application Number(s) or Registration Number(s)

☐ Mark if additional numbers attached

Enter either the Trademark Application Number or the Registration Number (DO NOT ENTER BOTH numbers for the same property).

| Trademark Application Number(s) | | | | Registration Number(s) | |
|---|---|---|---|---|---|
| | | | 2,194,066 | | |
| | | | | | |
| | | | | | |

## Number of Properties

Enter the total number or properties involved.   # 1

## Fee Amount

Fee Amount for Properties Listed (37 CFR 3.41):   $ 40.00

Method of Payment:
Deposit Account

Enclosed ☐        Deposit Account ☒

(Enter for payment by deposit account or if additional fees can be charged to the account.)

Deposit Account Number:   # 03-3821

Authorization to charge additional fees:   Yes ☒   No ☐

## Statement and Signature

To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document. Charges to deposit account are authorized, as indicated herein.

Malcolm B. Wittenberg
Name of Person Signing

Signature

2/10/00
Date

12166040

## TRADEMARK ASSIGNMENT

This Agreement is entered into by John Dahl (Assignee), with a principal place of business at P.O. Box 10058, Newport Beach, California 92658 and The Wyatt Williams and Joel Libove Partnership, D/B/A ICall, a South Carolina Partnership, (Assignor), with its principal place of business at 15005 Beacon Ridge, # 200, Seneca, South Carolina 29678.

For good and valuable consideration, The Wyatt Williams and Joel Libove Partnership, D/B/A ICall, does hereby assign to John Dahl any and all of its right, title, obligation and interest in U.S. Trademark Registration No. 2,194,088.

By: _____    _____
The Wyatt Williams and Joel Libove Partnership
d/b/a ICall, a South Carolina Partnership

Title: __General Manager__

Date: __20 Jan 00__      __Jan 20, 2000__

STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA

On _____, 2000, before me, _____, personally appeared _____
_____.- personally known to me - OR - ~ proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____
(SIGNATURE OF NOTARY)

2180639 1

## ALL-PURPOSE ACKNOWLEDGEMENT

State of California

County of _LOUTRA COSTA_ } ss.

On _JANUARY 20, 2000_ before me, _A. HARDSTONE_
(DATE)                                                        (NOTARY)

personally appeared _JOEL LIBOVE_ and _CHARLES WYATT_
                                    (SIGNER(S))                    _WILLIAMS_

☐ personally known to me    - OR -    ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

A. HARDSTONE
Comm. # 1233445
NOTARY PUBLIC - CALIFORNIA
Contra Costa County
My Comm. Expires August 29, 2003

WITNESS my hand and official seal.

_____
NOTARY'S SIGNATURE

━━━━━━━━━━━━━ **OPTIONAL INFORMATION** ━━━━━━━━━━━━━

The information below is not required by law. However, it could prevent fraudulent attachment of this acknowledgement to an unauthorized document.

### CAPACITY CLAIMED BY SIGNER (PRINCIPAL)

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES):

_____
_____

### DESCRIPTION OF ATTACHED DOCUMENT

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
OTHER

RIGHT THUMBPRINT
OF
SIGNER

Top of Thumbprint here

APA 5/99                          VALLEY-SIERRA  800-362-3369

# EXHIBIT B

# Trademark Assignment Details

Reel/Frame: 2059 / 0901

Received: 04/26/2000

View Recorded Assignment

Recorded: 02/23/2000

Conveyance: ASSIGNMENT: EFFECTIVE 01-31-2000

Pages: 3

## Total properties: 1

1   Serial #: 75098581   Filing Dt: 05/03/1996   Reg #: 2194066   Reg. Dt: 10/06/1998

Mark: ICALL

## Assignor

1   DAHL, JOHN

Exec Dt: 01/31/2000

Entity Type: INDIVIDUAL

Citizenship: UNITED STATES

## Assignee

1   ICALL, INC.

ONE WILSHIRE BLDG.

624 SOUTH GRAND AVENUE, SUITE 2900

LOS ANGELES, CALIFORNIA 90017

Entity Type: CORPORATION

Citizenship: CALIFORNIA

## Correspondence name and address

CROSBY, HEAFEY, ROACH & MAY

MALCOLM B. WITTENBERG

P.O. BOX 7936

FOUR EMBARCADERO CENTER, SUITE 1900

SAN FRANCISCO, CA 94120-7936

Search Results as of: 09/16/2010 02:17 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350.
Web interface last modified: October 18, 2008 v.2.0.1

FORM PTO-1618A
Expires 08/30/99
OMB 0651-0027

04-26-2000



101334294

U.S. Department of Commerce
Patent and Trademark Office
**TRADEMARK**

## RECORDATION FORM COVER SHEET
### TRADEMARKS ONLY

TO: The Commissioner of Patents and Trademarks: Please record the attached original document(s) or copy(ies).

## Submission Type

☒ New

☐ Resubmission (Non-Recordation)
Document ID# [        ]

☐ Correction of PTO Error
Reel # [        ] Frame # [        ]

☐ Corrective Document
Reel # [        ] Frame # [        ]

## Conveyance Type

☒ Assignment     ☐ License     *Ard 2.23-00*

☐ Security Agreement     ☐ Nunc Pro Tunc Assignment

☐ Merger

☐ Change of Name     Effective Date
Month Day Year
01/31/00

☐ Other [ 23497.00010 ]

## Conveying Party

☐ Mark if additional names of conveying parties attached

Name [ John Dahl ]

Formerly [        ]

Execution Date
Month Day Year
[01/31/0]

☒ Individual     ☐ General Partnership     ☐ Limited Partnership     ☐ Corporation     ☐ Association

☐ Other [        ]

☐ Citizenship/State of Incorporation/Organization [ U.S. ]

## Receiving Party

☐ Mark if additional names of receiving parties attached

Name [ iCall, Inc. ]

DBA/AKA/TA [        ]

Address (line 1) [ One Wilshire Bldg. ]

Address (line 2) [ 624 South Grand Avenue, Suite 2900 ]

Address (line 3) [ Los Angeles, ]          [ California ]          [ 90017 ]
                    City                    State/Country          Zip Code

☐ Individual     ☐ General Partnership     ☐ Limited Partnership
☒ Corporation     ☐ Association
☐ Other [        ]

If document to be recorded is an assignment and the receiving party is not domiciled in the United States, an appointment of a domestic representative is attached. *(Designation must be a separate document from Assignment.)*

☐ Citizenship/State of Incorporation/Organization — California

FOR OFFICE USE ONLY

Public burden reporting for this collection of information is estimated to average approximately 30 minutes per Cover Sheet to be recorded, including time for reviewing the document and gathering the data needed to complete the Cover Sheet. Send comments regarding this burden estimate to the U.S. Patent and Trademark Office, Chief Information Officer, Washington, D.C. 20231 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Paperwork Reduction Project (0651-0027), Washington, D.C. 20503. See OMB Information Collection Budget Package 0651-0027, Patent and Trademark Assignment Practice. DO NOT SEND REQUESTS TO RECORD ASSIGNMENT DOCUMENTS TO THIS ADDRESS.

**Mail documents to be recorded with required cover sheet(s) information to:**
Commissioner of Patents and Trademarks, Box Assignments, Washington, D.C. 20231

FORM PTO-1618B
Expires 06/30/99
OMB 0651-0027

**Page 2**

U.S. Department of Commerce
Patent and Trademark Office
**TRADEMARK**

## Domestic Representative Name and Address

Enter for the first Receiving Party only.

| | |
|---|---|
| Name | Malcolm B. Wittenberg |
| Address (line 1) | Crosby, Heafey, Roach & May |
| Address (line 2) | P.O. Box 7936 |
| Address (line 3) | Four Embarcadero Center, Suite 1900 |
| Address (line 4) | San Francisco, CA 94120-7936 |

## Correspondent Name and Address

Area Code and Telephone Number  415  543-8700

| | |
|---|---|
| Name | Malcolm B. Wittenberg |
| Address (line 1) | P.O. Box 7936 |
| Address (line 2) | Four Embarcadero Center, Suite 1900 |
| Address (line 3) | San Francisco, CA 94120-7936 |
| Address (line 4) | |

## Pages

Enter the total number of pages of the attached conveyance document including any attachments.   # 1

## Trademark Application Number(s) or Registration Number(s)

☐ Mark if additional numbers attached

Enter either the Trademark Application Number or the Registration Number (DO NOT ENTER BOTH numbers for the same property).

| Trademark Application Number(s) | | | Registration Number(s) | | |
|---|---|---|---|---|---|
| | | | 2,194,066 | | |
| | | | | | |
| | | | | | |

## Number of Properties

Enter the total number or properties involved.   # 1

## Fee Amount

Fee Amount for Properties Listed (37 CFR 3.41):  $  40.00

Method of Payment:
Deposit Account          Enclosed ☐          Deposit Account ☒

(Enter for payment by deposit account or if additional fees can be charged to the account.)

Deposit Account Number:   # 03-3821

Authorization to charge additional fees:   Yes ☒   No ☐

## Statement and Signature

To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document. Charges to deposit account are authorized, as indicated herein.

| Malcolm B. Wittenberg | | 2/10/00 |
|---|---|---|
| Name of Person Signing | Signature | Date |

12166040

## TRADEMARK ASSIGNMENT

This Agreement is entered into by John Dahl (Assignor), with a principal place of business at P.O. Box 10058, Newport Beach, California 92658 and iCall, Inc., a California Corporation (Assignee), with its principal place of business at One Wilshire Building, 624 South Grand Avenue, Suite 2900, Los Angeles, California 90017 (Assignee).

For good and valuable consideration, John Dahl, does hereby assign to iCall, Inc. any and all of its right, title, obligation and interest in U.S. Trademark Registration No. 2,194,066.

By: _____
John Dahl

Date: _____January 31, 2000_____

STATE OF CALIFORNIA
COUNTY OF Orange

On January 31, 2000, before me, Richard Buckner, Notary Public personally appeared John Dahl _____, ~ personally known to me J OR ~ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
(SIGNATURE OF NOTARY)

RICHARD BUCKNER
COMM...1231676
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. August 8, 2003

12181630.1

# EXHIBIT C

# Trademark Assignment Details

**Reel/Frame:** 3039 / 0886   View Recorded Assignment   **Pages:** 3
**Received:** 09/01/2004
**Conveyance:** ASSIGNS THE ENTIRE INTEREST   **Recorded:** 08/27/2004

## Total properties: 1

1   **Serial #:** 75098581   **Filing Dt:** 05/03/1996   **Reg #:** 2194066   **Reg. Dt:** 10/06/1998
**Mark:** ICALL

## Assignors

1   ICALL HOLDINGS, LTD.   **Exec Dt:** 09/17/2001
**Entity Type:** CORPORATION
**Citizenship:** BERMUDA

2   ICALL LTD.   **Exec Dt:** 09/17/2001
**Entity Type:** CORPORATION
**Citizenship:** BERMUDA

3   ICALL LTD.   **Exec Dt:** 09/17/2001
**Entity Type:** CORPORATION
**Citizenship:** DELAWARE

4   ICALL LTD.   **Exec Dt:** 09/17/2001
**Entity Type:** CORPORATION
**Citizenship:** CALIFORNIA

## Assignee

1   MACKEL, JOHN   **Entity Type:** INDIVIDUAL
10316 LORENZO DRIVE   **Citizenship:** UNITED STATES
LOS ANGELES, CALIFORNIA 90064

## Correspondence name and address

FITZPATRICK, CELLA, HARPER & SCINTO
TILA M. DUHAME
30 ROCKEFELLER PLAZA
NEW YORK, NY 10112-3800

Search Results as of: 09/16/2010 02:17 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350.
Web interface last modified: October 18, 2008 v.2.0.1

4/27/04

**TRANSMITTAL OF**
**TR**

09-01-2004

∥∥∥∥∥∥∥∥∥∥∥∥
102826771

To the Director, U.S. Patent and Trademark Of                    uments or copy thereof.

| | |
|---|---|
| 1. Name of conveying party(ies): | 2. Name an...        ...ving party(ies): |
| AUG 27 2004 | Name: John Mackel |
| iCall Holdings, Ltd. | Street Address: 10316 Lorenzo Drive |
| ☐ Individual(s)        ☐ Association | |
| ☐ General Partnership  ☐ Limited Partnership | |
| ☐ Corporation-State | |
| ☒ Other Bermuda Corporation | City: Los Angeles      State CA    ZIP 90064 |
| Additional name(s) of conveying party(ies) attached? | ☒ Individual(s) citizenship USA |
| ☒ Yes         ☐ No | ☐ Association |

| | |
|---|---|
| 3. Nature of conveyance: | ☐ General Partnership |
| ☒ Assignment        ☐ Merger | ☐ Limited Partnership |
| ☐ Security Agreement  ☐ Change of Name | ☐ Corporation-State |
| ☐ Other _____ | ☐ Other _____ |
| | If assignee is not domiciled in the United States, a domestic |
| Execution Date: September 17, 2001 | representative designation is attached: ☐ Yes ☐ No |
| | (Designation must be a separate document from Assignment) |
| | Additional name(s) & address(es) attached? ☐ Yes ☒ No |

| | |
|---|---|
| 4. Application number(s) or registration number(s): | |
| A.  Trademark Application No.(s) | B.  Trademark Registration No.(s) 2,194,066 |
| | |
| Additional numbers attached?  ☐ Yes   ☒ No | |

| | |
|---|---|
| 5. Name and address of party to whom correspondence concerning document should be mailed: | 6. Number of applications and registrations involved: 1 |
| Name: _____ Fitzpatrick, Cella, Harper & Scinto | 7. Total fee (37 CFR 3.41): . . $40.00 |
| 30 Rockefeller Plaza | ☐ Enclosed |
| New York, New York 10112-3800 | ☒ Authorized to be charged to deposit account |
| Telephone No.: (212) 218-2100 | 8. Deposit account number |
| Facsimile No.: (212) 218-2200 | 06-1205 |
| | (Attach duplicate copy of this page if paying by deposit account): |

**DO NOT USE THIS SPACE**

9.  Statement and signature.

*To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the*
*original document.*

Tila M. Duhaime                    Tila M. D⎯                    Aug 26, 2004

| Name of Person Signing | Signature | Date |

09/01/2004 GTON11  00000009 061205   2194066
01 FC:8521      40.00 DA                    Total number of pages including cover sheet, attachments, and documents:

Form #123

NY_MAIN 448366v1

# ATTACHMENT TO TRADEMARK RECORDAL COVER SHEET

1.      (Con't)

      iCall Ltd.
      Bermuda Corporation
      Citizenship: Bermuda
      Execution Date: September 17, 2001

      iCall Ltd.
      Delaware Coporation
      Citizenship: Delaware
      Execution Date: September 17, 2001

      iCall Ltd.
      California Corporation
      Citizenship: California
      Execution Date: September 17, 2001

NY_MAIN 448369v1

## TRADEMARK ASSIGNMENT

This Agreement is entered into by iCall Holdings Ltd., a Bermuda corporation, and its subsidiaries iCall Ltd., a Bermuda corporation, iCall, Inc., a Delaware corporation, and its merged predecessor iCall, Inc., a California corporation (Assignor), with its principal place of business at One Wilshire Building, 624 South Grand Avenue, Suite 2900, Los Angeles, California 90017, and John Mackel (Assignee), 10316 Lorenzo Drive, Los Angeles, CA 90064.

1.      For good and valuable consideration, Assignor does hereby assign to Assignee any and all of its right, title, obligation and interest in U.S. Trademark Registration No. 2,194,066.

2.      Assignee hereby accepts assignment of U.S. Trademark Registration No. 2,194,066.

iCall Holdings Ltd.

By: _____

Anthony Fischler, Director

_____

John Mackel

STATE OF CALIFORNIA

COUNTY OF Los Angeles

On 9/17 , 2001, before me, MUTHIAH NACHIAPPAN , personally appeared ANTHONY HOWARD FISCHLER personally known to me - OR - proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

_____
(SIGNATURE OF NOTARY)

MUTHIAH NACHIAPPAN
Comm. # 1283949
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires Dec. 8, 2004

# EXHIBIT D

09-01-2004

TRANSMITTAL O~
TH~

|||||||||||||||||||||||||||||||||||
102826772

To the Director, U.S. Paten~ and Trademar~ O~                    uments or copy thereof.

**1.   Name of conveying party(ies):**

John Mackel

- [X] Individual(s)
- [ ] General Partnership
- [ ] Corporation-State
- [ ] Other _____

Additional name(s) of conveying party(ies) attached?
- [ ] Yes   [X] No

**2.   Name and address of receiving party(ies):**

Name: Arlo C. Gilbert

Street Address: iDownload.com
1180 Avenue of the Americas, 14th Floor
City: New York     State NY     ZIP 10036

- [x] Individual(s) citizenship USA
- [ ] Association _____
- [ ] General Partnership _____
- [ ] Limited Partnership _____
- [ ] Corporation-State _____
- [ ] Other _____

If assignee is not domiciled in the United States, a domestic representative designation is attached:   [ ] Yes   [ ] No
(Designation must be a separate document from Assignment)
Additional name(s) & address(es) attached?   [ ] Yes   [x] No

**3.   Nature of conveyance:**

- [x] Assignment
- [ ] Security Agreement
- [ ] Other _____
- [ ] Merger
- [ ] Change of Name

Execution Date: July 30, 2004

**4.   Application number(s) or registration number(s):**

A.  Trademark Application No.(s)

B.  Trademark Registration No.(s) 2,194,066

Additional numbers attached?   [ ] Yes   [x] No

**5.   Name and address of party to whom correspondence concerning document should be mailed:**

Name: _____ Fitzpatrick, Cella, Harper & Scinto
_____ 30 Rockefeller Plaza
_____ New York, New York 10112-3800

Telephone No.: (212) 218-2100
Facsimile No.: (212) 218-2200

**6.   Number of applications and registrations involved: 1**

**7.   Total fee (37 CFR 3.41): .. $ 40.00**
- [ ] Enclosed
- [X] Authorized to be charged to deposit account

**8.   Deposit account number**

06-1205
(Attach duplicate copy of this page if paying by deposit account):

**DO NOT USE THIS SPACE**

**9.   Statement and signature.**

*To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document.*

| Tila M. Duhaime | *Tila M. D.* | Aug. 26, 2004 |
|---|---|---|
| Name of Person Signing | Signature | Date |

Total number of pages including cover sheet, attachments, and documents:

Form #123
09/01/2004 6TOM11   00000008 061205   2194066
01 FC:8521       40.00 BA
NY_MAIN 448365v1

## TRADEMARK ASSIGNMENT

This Agreement is entered into by John Mackel (Assignor), whose address is 10316 Lorenzo Drive, Los Angeles, CA 90064, and Arlo C. Gilbert (Assignee), whose address is IDownload.com, 1180 Avenue of the Americas, 14th Floor, New York, New York 10036.

 1. For good and valuable consideration, Assignor does hereby assign to Assignee any and all of its right, title, obligation and interest in U.S. Trademark Registration No. 2,194,066.

 2. Assignee hereby accepts assignment of U.S. Trademark Registration No. 2,194,066.



John E. Mackel, Assignor

_____

Arlo C. Gilbert, Assignee

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On July 30, 2004, before me, M. Chacon, personally appeared John E. Mackel personally known to me – OR – (proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

[seal]

M. CHACON
Commission # 1282088
Notary Public – California
Los Angeles County
My Comm. Expires Nov 24, 2004

(Signature of Notary)

# EXHIBIT E

# Trademark Assignment Details

**Reel/Frame:** 3733 / 0748
**Received:** 03/07/2008          View Recorded Assignment          **Pages:** 3
**Attorney Dkt #:** 03735.000001          **Recorded:** 03/07/2008
**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Total properties: 1**

1     **Serial #:** 75098581     **Filing Dt:** 05/03/1996     **Reg #:** 2194066     **Reg. Dt:** 10/06/1998
       **Mark:** ICALL

## Assignor

1   GILBERT, ARLO C.
                                                                    **Exec Dt:** 03/07/2008
                                                                    **Entity Type:** INDIVIDUAL
                                                                    **Citizenship:** UNITED STATES

## Assignee

1   ICALL, INC.
    TWO SOUNDVIEW DRIVE                                             **Entity Type:** CORPORATION
    GREENWICH, CONNECTICUT 06830                                   **Citizenship:** DELAWARE

## Correspondence name and address

    TIMOTHY J. KELLY
    30 ROCKEFELLER PLAZA, 38TH FLOOR
    FITZPATRICK, CELLA, HARPER & SCINTO
    NEW YORK, NY 10112

                                                          Search Results as of: 09/16/2010 02:18 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350.
Web interface last modified: October 18, 2008 v.2.0.1

## TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |

CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| Arlo C. Gilbert | | 03/07/2008 | INDIVIDUAL: UNITED STATES |

RECEIVING PARTY DATA

| | |
|---|---|
| Name: | iCall, Inc. |
| Street Address: | Two Soundview Drive |
| City: | Greenwich |
| State/Country: | CONNECTICUT |
| Postal Code: | 06830 |
| Entity Type: | CORPORATION: DELAWARE |

PROPERTY NUMBERS  Total: 1

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 2194066 | ICALL |

CORRESPONDENCE DATA

Fax Number:        (212)218-2200

*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*

Phone:             2122182100
Email:             tkelly@fchs.com, epagan@fchs.com, docketing@fchs.com
Correspondent Name:  Timothy J. Kelly
Address Line 1:    30 Rockefeller Plaza, 38th Floor
Address Line 2:    FITZPATRICK, CELLA, HARPER & SCINTO
Address Line 4:    New York, NEW YORK   10112

| ATTORNEY DOCKET NUMBER: | 03735.000001 |
|---|---|
| NAME OF SUBMITTER: | Timothy J. Kelly |
| Signature: | /tjk/ |
| Date: | 03/07/2008 |

2194066

CH $40.00

Total Attachments: 1
source=Assignment#page1.tif

## UNITED STATES
## TRADEMARK ASSIGNMENT

WHEREAS, Arlo C. Gilbert, an individual having an address at 1180 Avenue of the Americas, 14th Floor, New York, NY 10036 (the "Assignor"), is the owner of the trademark ICALL and United States Trademark Registration No. 2,194,066 for the mark ICALL (hereinafter the "Trademark") and;

WHEREAS, iCall, Inc., a corporation organized and existing under the laws of the State of Delaware, located and doing business at Two Soundview Drive, Greenwich, CT 06830 (the "Assignee"), is desirous of acquiring all right, title and interest in and to the Trademark together with the goodwill of the business symbolized by the Trademark.

NOW, THEREFORE, in exchange for good and valuable consideration paid to Assignor by Assignee, the receipt of which is hereby acknowledged, Assignor hereby assigns to Assignee all of Assignor's right, title, and interest in and to the Trademark together with the goodwill of the business symbolized by the Trademark.

Signed at Greenwich, Connecticut this 7th day of March, 2008.

Arlo C. Gilbert

By:

Title: Owner/Assignor

PCHS_WS 2021760_1.DOC

# EXHIBIT F

## TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | NUNC PRO TUNC ASSIGNMENT |
| EFFECTIVE DATE: | 07/30/2004 |

CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| Mr. John E Mackel | | 11/24/2009 | INDIVIDUAL: UNITED STATES |

RECEIVING PARTY DATA

| Name: | Mr. Arlo C Gilbert |
|---|---|
| Street Address: | 41 West Putnam Avenue |
| City: | Greenwich |
| State/Country: | CONNECTICUT |
| Postal Code: | 06830 |
| Entity Type: | INDIVIDUAL: UNITED STATES |

PROPERTY NUMBERS Total: 1

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 2194066 | ICALL |

CORRESPONDENCE DATA

Fax Number:        (520)843-2083
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:             5208410835
Email:             chas@charlescarreon.com
Correspondent Name:   Charles Carreon
Address Line 1:    2165 S Avenida Planeta
Address Line 4:    Tucson, ARIZONA 85710

| ATTORNEY DOCKET NUMBER: | ICALL 12.10.09 |
|---|---|
| NAME OF SUBMITTER: | Charles Carreon |
| Signature: | /Charles Carreon/ |

OP  $40.00  2194066

| Date: | 12/10/2009 |
|---|---|

Total Attachments: 2
source=Mackel-Gilbert-NPT.Signed#page1.tif
source=Mackel-Gilbert-NPT.Signed#page2.tif

## NUNC PRO TUNC ASSIGNMENT OF ENTIRE INTEREST

This *nunc pro tunc* trademark assignment is made from John E. Mackel, 801 S. Grand Avenue, 10th Floor, Los Angeles, California 90017 ("Assignor") to Arlo C. Gilbert, iCall, Inc., 41 West Putnam Ave., Greenwich, Connecticut 06830 ("Assignee").

Whereas, on July 30, 2004, Assignor held all right, title, and interest in and to U.S. Trademark Registration No. 2,194,066, for the mark ICALL, which mark was registered on October 6, 1998 (the "Mark"), and which right, title and interest of Assignor included the goodwill associated with and symbolized by the Mark;

Whereas, on July 30, 2004, Assignor previously executed an assignment that assigned all of his right, title, and interest in and to the Mark to Assignee (the "2004 Assignment"), which Assignment however omitted, due to clerical error, the formal assignment of the goodwill associated with and symbolized by the Mark;

Whereas, Assignor and Assignee agree that the Assignment as originally executed was intended to convey both the Mark and the goodwill associated with and symbolized by the Mark;

Now therefore, for good and valuable consideration that is hereby acknowledged, Assignor hereby assigns, transfers and otherwise conveys to Assignee, all right, title and interest in and to the Mark, including the goodwill symbolized by and associated with the Mark, *nunc pro tunc*, effective as of July 30, 2004.

Date: 11/24/2009 , 2009

Assignor:

John E. Mackel
801 S. Grand Avenue
10th Floor
Los Angeles, California 90017
Tel: 213-624-8407
Fax: 213-624-0174

Dated effective as of: _____

SUBSCRIBED and SWORN to before me
this _____ of _____, 2009

_____
Notary Public
My Commission Expires: _____

*See attached jurat.*

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____    _____
Signature of Document Signer No. 1    Signature of Document Signer No. 2 (if any)

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this

24th day of November , 20 09 , by

(1) John E. Maekel
        Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.()XX

(and)

(2) _____
        Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____
        Signature of Notary Public

BRENDA LEE TAVERA
Commission # 1711120
Notary Public - California
Los Angeles County
My Comm. Expires Jan 13, 2011

Place Notary Seal Above

─────────────── OPTIONAL ───────────────

Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document

**Further Description of Any Attached Document**

Title or Type of Document: Nunc Pro Tunc Assignment of Entire Interest

Document Date: 11-24-09    Number of Pages: 1

Signer(s) Other Than Named Above: none

RIGHT THUMBPRINT OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT OF SIGNER #2
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT G

1

2

3

4

5

6

7                           IN THE UNITED STATES DISTRICT COURT

8                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                                      SAN JOSE DIVISION

10   iCall, Inc.,                              NO. C 10-02206 JW

11              Plaintiff,                     **ORDER DENYING DEFENDANTS'
                                               MOTION TO TRANSFER; GRANTING IN
12                                             PART AND DENYING IN PART
     v.                                        DEFENDANTS' MOTIONS TO DISMISS;
13                                             DENYING PLAINTIFF'S MOTION FOR
                                               PRELIMINARY INJUNCTION**
14   Reliance Communications Ltd., et al.,

15              Defendants.
                                    /
16

17                                    **I.  INTRODUCTION**

18          iCall, Inc. ("Plaintiff") brings this action against Reliance Communications, Ltd. ("RCOM")

19   and several related Reliance companies,[1] alleging, *inter alia*, trademark infringement pursuant to the

20   Lanham Act, 15 U.S.C. § 1125, and unfair competition under the California Business & Professions

21   Code, Cal. Bus. & Prof. Code § 17200.  Plaintiff alleges that Defendants' use of the name "Reliance

22   iCall" on the Internet to promote voice-over Internet protocol ("VoIP") products results in consumer

23   confusion, attracting customers by leveraging the goodwill and consumer familiarity associated with

24   Plaintiff's iCall mark.

25

26   ────────────

27          [1]  Plaintiff also named as Defendants: Reliance Communications (U.K.) Ltd. ("RCUK"),
     Reliance Communications International, Inc. ("RCII"), Reliance GlobalCom Services, Inc. ("RGSI")
     and relianceicall.com.  (hereafter, along with Defendant RCOM, are collectively referred to as
28   "Defendants.")

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1   Presently before the Court are (1) Defendants' Motion to Transfer Venue;[2] (2) Defendants

2   RCOM and RCUK's Motion to Dismiss;[3] (3) Defendants RCII and RGSI's Partial Motion to

3   Dismiss;[4] and (4) Plaintiff's Motion for a Preliminary Injunction.[5]  The Court conducted a hearing

4   on September 13, 2010.  Based on the papers submitted to date and oral argument, the Court

5   GRANTS in part and DENIES in part the parties' various Motions.

6   **II.  BACKGROUND**

7   In a Second Amended Complaint[6] filed on June 22, 2010, Plaintiff alleges as follows:

8   Plaintiff is incorporated under the laws of the State of Delaware, and registered to do

9   business in California.  (SAC ¶ 5.)  Defendant RCOM is incorporated under the laws of

10  India, with its principal place of business in India.  (Id. ¶ 6.)  Defendant RCII is incorporated

11  under the laws of the State of Delaware and is registered to do business in the State of

12  California.  (Id. ¶ 7.)  Defendant RCUK is incorporated under the laws of the United

13  Kingdom with its principal place of business in London.  (Id. ¶ 8.)  Defendant RGSI is

14  incorporated under the laws of the State of Delaware and is registered to do business in the

15  State of California.  (Id. ¶ 9.)  *In rem* Defendant reliancecall.com is an Internet domain name

16  which is registered with VeriSign, Inc., located in Mountain View, California.  (Id. ¶ 11.)

17  Plaintiff is the owner of the iCall trademark, first registered with the USPTO on

18  October 6, 1998.  (SAC ¶ 15.)  Plaintiff offers VoIP services that operate on desktop

19  computers and handheld devices through its icall.com website.  (Id.)  The iCall mark has

20

21

22  [2]  (hereafter, "Motion to Transfer," Docket Item No. 30.)

23  [3]  (hereafter, "RCOM & RCUK's Motion to Dismiss," Docket Item No. 28.)

24  [4]  (hereafter, "RCII & RGSI's Motion to Dismiss," Docket Item No. 29.)

25  [5]  (hereafter, "Injunction Motion," Docket Item No. 33.)

26  [6]  (Second Amended Complaint for Injunctive Relief and Damages for Trademark
    Infringement, Trademark Dilution, Cybersquatting, and Unfair Competition, hereafter, "SAC,"
27  Docket Item No. 19.)

28

become popular because of its efficacy and user-friendliness, especially among iPhone users. (Id. ¶¶ 17-25.)

Plaintiff has never had any business relationship with Defendants, who go by the trade name "Reliance." (SAC ¶ 26.) Defendants use the term "Reliance iCall" on the Internet to promote their VoIP products in competition with Plaintiff. (Id.) Defendants have also registered the domain name "relianceicall.com." (Id. ¶ 28.) Defendants have created an inherently confusing mark, exploiting the resulting consumer confusion to attract customers by usurping the goodwill and consumer familiarity associated with Plaintiff's iCall mark. (Id. ¶¶ 26, 28.)

On the basis of the allegations outlined above, Plaintiff alleges nine causes of action: (1) Violation of the Lanham Act § 32 (15 U.S.C. § 1114); (2) Violation of the Lanham Act § 43 (15 U.S.C. § 1125(a)); (3) Violation of the Lanham Act § 43 (15 U.S.C. § 1125(c)); (4) Violation of the Lanham Act § 43 (15 U.S.C. § 1125(d)); (5) Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.; (6) Violation of Cal. Bus. & Prof. Code § 14245; (7) Violation of Cal. Bus. & Prof. Code § 14247; (8) Violation of Cal. Bus. & Prof. Code § 14415; and (9) Declaratory Relief.

### III. DISCUSSION

Presently before the Court are the parties' various Motions. The Court addresses each Motion in turn.

### A. Defendants' Motion to Transfer Venue

Defendants move to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), on the grounds that Defendant RCII is located there and that Plaintiff's headquarters is based in Connecticut. (Motion to Transfer at 1.) Defendants also contend that key witnesses and evidence for both parties are located in or near New York City, whereas California lacks significant connection to the matters alleged in the Complaint. (Id.) Plaintiff contends that transfer of venue to the Southern District of New York is improper, as the suit could not have been

United States District Court

For the Northern District of California

1    brought in that district for lack of personal jurisdiction over all Defendants.[7]  In addition, Plaintiff

2    contends that transfer of venue is also improper because most of the witnesses will be located in

3    California, where Defendants' alleged target market and Defendant RGSI is located, rather than

4    New York.  (Id.)

5         Under 28 U.S.C. § 1404(a), a district court may transfer a case pending before it to "any

6    other district or division where it might have been brought."  To support a motion for transfer, the

7    moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee

8    district is one where the action might have been brought; and (3) that the transfer will serve the

9    convenience of the parties and witnesses and will promote the interests of justice.  See Goodyear

10   Tire & Rubber Co.  v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).  A

11   plaintiff's choice of forum, however, is accorded substantial weight, and a court will not grant a

12   motion under § 1404(a) unless the defendant makes a strong showing of inconvenience.  See Decker

13   Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

14        Here, by moving to transfer pursuant to § 1404(a), Defendants do not dispute that this district

15   is a proper venue.  Thus, Defendants must show that the Southern District of New York is a district

16   where the action might have been brought.  The Court finds that Defendants have not shown that

17   personal jurisdiction would be proper over all named Defendants in New York.  Because Plaintiff

18   contends that the primary market for relianceicall.com is in California,[8] Defendants have failed to

19   show that purposeful availment could be demonstrated for New York.  Moreover, Defendants have

20   failed to show that in rem jurisdiction over allegedly infringing domain name relianceicall.com

21   would be proper in New York under the Anti-Cybersquatting Consumer Protection Act of 1999

22   ("ACPA"), which allows in rem jurisdiction over a domain name "in the judicial district in which

23   the domain name registry, or other domain name authority that registered or assigned the domain

24   name is located . . . ."  15 U.S.C. § 1125(d)(2)(A).  Thus, the Court finds that Defendants have not

25        [7] (Plaintiff's Opposition to Defendants' Motion to Transfer Venue, hereafter, "Transfer

26   Opp'n," Docket Item No. 49.)

27        [8] (Transfer Opp'n at 5.)

28                                             4

United States District Court

For the Northern District of California

1    met their burden to show that the suit could have been brought against all Defendants in the

2    Southern District of New York.[9]

3          Accordingly, the Court DENIES Defendants' Motion to Transfer Venue.

4    **B.    Defendants RCOM and RCUK's Motion to Dismiss**

5          Defendants RCOM and RCUK move to dismiss on the grounds that (1) the Court lacks

6    jurisdiction over them; (2) Plaintiff has failed to properly serve both Defendants; and (3) Plaintiff's

7    Six and Eighth Causes of Action fail to state a claim.  (RCOM & RCUK's Motion to Dismiss 3-12.)

8    The Court addresses each ground in turn.

9          **1.    Lack of Personal Jurisdiction**

10         Defendants RCOM and RCUK move to dismiss on the ground that the Court lacks personal

11   jurisdiction over them.  (RCOM & RCUK's Motion to Dismiss at 3-10.)  Defendants contend that

12   personal jurisdiction over RCOM, a company based in and incorporated under the laws of India, is

13   improper as it does not do business, nor is it registered to do business in California.  (Id. at 3-4.)

14   Further, Defendants contend that RCUK, a company based in and incorporated under the laws of the

15   United Kingdom, is also improper as the company has focused its sales of the Reliance iCall service

16   on customers outside the United States and does not do business in California.  (Id. at 4.)  Plaintiff

17   contends that Defendant RCOM is subject to specific personal jurisdiction in California based on its

18   ownership of the interactive website relianceicall.com, which engages in business with residents of

19   California.[10]  Moreover, RCUK is also subject to specific personal jurisdiction in California,

20   according to Plaintiff, based on its entering into "click wrap" contracts with California residents

21   through the relianceicall.com subscriber agreement.  (Id. at 9-10.)

22   _____

23        [9]  Since the § 1404(a) factors are conjunctive and Defendants have failed show that the
     transferee district is one where the action might have been brought, the Court need not address the
24   third factor for convenience of the parties and witnesses.  However, it is worth noting that
     Defendants have not made a strong showing of inconvenience.  While the location of Defendant
25   RCII may be a factor, Defendants do not identify with sufficient particularity the burden that would
     be imposed by litigating the action in California.
26
27        [10]  (Plaintiff's Opposition to the Motion to Dismiss the Second Amended Complaint at 8-10,
     hereafter, "Dismiss Opp'n," Docket Item No. 48.)

28                                              5

United States District Court

For the Northern District of California

Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Although the defendant ordinarily files such a motion, it is the plaintiff that bears the burden of proof as to the necessary jurisdictional facts. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). However, the plaintiff need only make a prima facie showing that personal jurisdiction exists if the defendant files its motion to dismiss as an initial response. Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). To make a prima facie showing, the plaintiff need only to demonstrate facts that if true would support jurisdiction over the defendant. Data Disc, 557 F.2d at 1285. The plaintiff must make a prima facie showing as to each defendant. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

When a defendant's contacts are not sufficiently systematic and continuous for a court to assert general jurisdiction, the Ninth Circuit uses the following test to evaluate a defendant's contacts for purposes of determining whether specific jurisdiction applies:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
> (3) Exercise of jurisdiction must be reasonable.

Data Disc, 557 F.2d at 1287.

The Court considers personal jurisdiction as to each Defendant in turn.

### a. Defendant RCOM

Plaintiff contends that Defendant RCOM is subject to specific personal jurisdiction based on its ownership and operation of the interactive website relianceicall.com to transact business with California citizens.[11] (Dismiss Opp'n at 8-10.) Defendants contend that RCOM is merely the

---

[11] Plaintiff alleges in their Second Amended Complaint that the Court has general jurisdiction over Defendants RCOM and RCUK. (SAC at 4.) The Court rejects the theory that the ownership of *quasi in rem* property within a forum state is enough to establish general personal jurisdiction over a defendant. See Shaffer v. Heitner, 433 U.S. 186, 189 (1977). The Supreme Court has held that the location of *quasi in rem* property within a forum state, in this case a domain name, does not obviate a plaintiff from its obligation to satisfy the standard minimum contacts test to establish personal jurisdiction in comportment with due process. Id.

United States District Court
For the Northern District of California

1  domain name registrant and not the "owner" of the site, rather, the Reliance iCall business and its

2  corresponding website is owned by and under the complete control of Defendant RCOM's wholly

3  owned subsidiary, Defendant RCII.  (RCOM & RCUK's Motion to Dismiss at 3-4.)

**i.     Jurisdiction Based on Interactivity of relianceicall.com**

5  At issue is whether relianceicall.com's interactivity is sufficient to establish specific personal

6  jurisdiction over Defendant RCOM.

7  Traditionally, the operation of an interactive website has been interpreted by courts as

8  subjecting the operator to specific jurisdiction.  Compuserve, Inc. v. Patterson, 89 F.3d 1257 (6th

9  Cir. 1996).  The Ninth Circuit has adopted the "sliding scale" determination for specific personal

10  jurisdiction's "purposeful availment" prong based on availment of a forum state utilizing the

11  Internet.  The more "interactive" a defendant's website is, the greater the "purposeful availment" of

12  the forum state for purposes of determining specific personal jurisdiction.  Cybersell, Inc. v.

13  Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997).  The focus of the "sliding scale" interactivity

14  analysis is on the amount of data transmission possible between parties using website features and

15  whether the website facilitated data transmissions or business transactions with residents of the

16  forum state.  Id. at 419.  This sliding scale analysis is drawn from the widely-known Compuserve[12]

17  and Bensusan[13] model.

18  Here, Plaintiff alleges that relianceicall.com is clearly "interactive," as it enables users to

19  enter all of their information to subscribe to the online service, sends a confirmation email to

20  complete subscription, allows payment by credit card through the site and supplies subscribers with

21  downloadable software that they can use to make calls over the Internet.  (SAC at 8-9.)  Although

22  Defendant RCOM does not dispute that it holds the registry for the domain name, Defendant RCOM

23  contends that it is merely the parent company to the actual owner of the Reliance iCall business.

24  Rather, it is Defendant RCII, Defendant RCOM's wholly-owned subsidiary, who it claims has actual

---

[12]  89 F.3d at 1257.

[13]  Bensusan Restaurant Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).

7

United States District Court

For the Northern District of California

1  possession and control over the website.  (RCOM & RCUK's Motion to Dismiss at 3-4.)  In light of

2  the dispute over who is the actual operator of relianceicall.com, the Court finds that jurisdictional

3  discovery may be appropriate.

ii.     **Jurisdiction Based on Domain Name Registry**

5          In the alternative, Plaintiff contends that the Court can assert personal jurisdiction over

6  Defendant RCOM based solely on the fact that the domain name registry of relianceicall.com is

7  physically located in this district.  (Dismiss Opp'n at 8.)  Specifically, Plaintiff contends that the

8  recent Ninth Circuit holding in Zuccarini establishes that domain names are property in the forum

9  state that the domain name registry is physically located and, therefore, could be used as a basis to

10  determine satisfaction of the minimum contacts test.  Office Depot Inc. v. Zuccarini, 596 F.3d 696

11  (9th Cir. 2010).

12          In Zuccarini, the Ninth Circuit relied on the language of ACPA, which defined statutorily

13  that the situs of a domain name is in the district where the registry is located, to hold that the

14  location of domain names for *quasi in rem* jurisdiction under California law is also the registry's

15  district.  Id. at 703.  In so doing, the Zuccarini court held that "domain names are personal property

16  located wherever the registry or registrar is located."  Id. at 702.  Thus, domain names are located at

17  the site of their registry for *quasi in rem* jurisdiction.  Id.  However, the Zuccarini court specifically

18  stated that locating a domain name for the purpose of attaching *quasi in rem* jurisdiction was "a legal

19  fiction" and that the location of intangible property would necessarily vary "depending on the

20  purpose to be served . . . ."  596 F.3d at 702.  In fact, "[a] single piece of intangible property may be

21  located in multiple places for some purposes."  Id.  This "legal fiction" would doubtfully provide the

22  level of notice required by the Due Process Clause to allow its use in proper satisfaction of the

23  minimum contacts test.

24          Thus, the Court finds that Plaintiff's reliance on Zuccarini is misplaced.  Moreover,

25  Plaintiff's interpretation of Zuccarini is in conflict with the Ninth Circuit's holding in Panavision

26  that registration of a domain name and posting a website at that domain name would be insufficient

27  in itself to establish personal jurisdiction, and that it would clearly require "something more."

28

8

United States District Court

For the Northern District of California

Panavision v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). In Panavision, the Ninth Circuit affirmed the district court's finding of specific personal jurisdiction over a defendant who registered the domain name panavision.com in Illinois and then enacted a scheme to obtain $13,000 from Panavision, a California company, for the domain name. Id. at 1318. The Ninth Circuit based its affirmation on the fact that, in addition to registration of a domain name and posting a website, the defendant had done "something more" in satisfaction of the "effects doctrine."

> We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another.[14] As we said in Cybersell, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. Id.

Here, Plaintiff has alleged that beyond being the registered owner of the domain name relianceicall.com, Defendant RCOM has achieved the "something more" requirement through its control of the relianceicall.com website and all of its subsidiary businesses, located in California and doing business with California citizens. (Dismiss Opp'n at 8-10.) Defendants dispute that there is a greater relationship between it and Defendant RCII other than principle and subsidiary. (RCOM & RCUK's Motion to Dismiss at 3.) Moreover, Defendant RCOM disputes that it has any control or involvement with the relianceicall.com website. (Id. at 4.) Thus, the Court finds that the extensive factual disputes over relationships between affiliated companies, involvement with the Internet business and divided website ownership in this case warrant jurisdictional discovery.

Accordingly, the Court DENIES Defendants' Motion to Dismiss for Lack of Personal Jurisdiction over Defendant RCOM as premature and without prejudice. The Court GRANTS Plaintiff's request for jurisdictional discovery.[15]

### b.    Defendant RCUK

Plaintiff contends that personal jurisdiction is proper over Defendant RCUK based on Defendant's formation of "click-wrap" agreements with all of Reliance iCall subscribers prior to

---

[14]  (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997)).

[15]  In its Opposition, Plaintiff also seeks an order excluding a prior, non-binding arbitration decision from evidence based on Federal Rules of Evidence 401, 802 and 403. (Dismiss Opp'n at 19-20.) The Court DENIES Plaintiff's request as premature.

9

United States District Court

For the Northern District of California

1   August 19, 2010.  (Dismiss Opp'n at 9-10.)  Defendants contend that the identification of Defendant

2   RCUK as the entity with which "click-wrap" agreements were formed was in error and has

3   subsequently been corrected.  (RCOM & RCUK's Motion to Dismiss at 4.)  Defendant RCUK

4   further contends that, other than the terms of service listing, it does not offer Reliance iCall services

5   to customers in the United States, nor does it do business in California, have offices in California,

6   have any real property in California or have an agent registered for service in California.  (Id.)

7   Similar to Defendant RCOM, the Court finds that extensive factual disputes over mistaken "click-

8   wrap" agreements and divided website ownership warrant jurisdictional discovery.

9       Accordingly, the Court DENIES Defendants' Motion to Dismiss for Lack of Personal

10   Jurisdiction over Defendant RCUK as premature and without prejudice.  The Court GRANTS

11   Plaintiff's request for jurisdictional discovery.

12       **2.    Lack of Service**

13       Defendants RCOM and RCUK also move to dismiss the Second Amended Complaint on the

14   ground that they were not personally served.  (RCOM & RCUK's Motion to Dismiss at 10-12.)

15   Plaintiff contends that it effected service on Defendants RCOM and RCUK through Plaintiff's

16   service on Defendant RGSI.  (Dismiss Opp'n at 14-16.)

17       Federal courts cannot exercise jurisdiction over a defendant without proper service of

18   process.  Omni Capital Int'l, Ltd. v. Wolff & Co., 484 U.S. 97, 104 (1987).  Insufficient service can

19   result in dismissal.  Fed. R. Civ. P. 12(b)(5).  "Once service is challenged, plaintiff[] bear[s] the

20   burden of establishing that service was valid under [Rule] 4."  Brockmeyer v. May, 383 F.3d 798,

21   801 (9th Cir. 2004).

22       Service on a foreign corporation may be accomplished in the manner prescribed by Federal

23   Rule of Civil Procedure 4(e)(1) for serving an individual.  Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1)

24   further explains that process may be served in accordance with state law "in the state where the

25   district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  California Code of Civil

26   Procedure, in turn, provides that process may be served on a corporation by delivering a copy of the

27   summons and the complaint to, among others, certain corporate officers or as provided in California

28                                          10

Corporations Code § 2110. Cal. Civ. P. Code § 416.10(b). Finally, California Corporations Code § 2110 provides that service can be made on any "general manager in this state." Cal. Corp. Code § 2110.

A "general manager" includes "any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'" Gibble v. Car-Lene Research, Inc., 78 Cal. Rptr. 2d 892, 904 (Cal. Ct. App. 1998) (quoting Eclipse Fuel Engineering Co. v. Sup. Ct., 148 Cal. App. 2d 736, 745-46 (Cal. Ct. App. 1957)). Whether an entity constitutes a corporation's "general manager" in California depends on the facts of the case. Cosper v. Smith & Wesson Arms Co., 53 Cal. 2d 77, 83 (Cal. 1959). In Cosper, for example, the California Supreme Court held that a California representative of a Massachusetts gun manufacturer constituted the manufacturer's "general manager" for service purposes. Id. at 84. The relationship between the manufacturer and its California representative was limited to a contract for the representative to promote the sale of the manufacturer's guns based on commission. Id. at 80. There was no formal corporate relationship, no control over employees and no assistance (other than the furnishing of advertising materials) between the two parties. Id. at 80-81. Nonetheless, the court found that this arrangement provided the out-of-state manufacturer with substantially the same business advantages it would have enjoyed if it had opened its own California office. Id. at 84.

In this case, the Court finds that Defendant RGSI is a "general manager" of Defendants RCOM and RCUK for service purposes. First, it is undisputed that Defendant RGSI is a wholly-owned subsidiary of Defendant RCOM, and that Defendant RGSI's website prominently displays the Reliance iCall logo at issue in this case.[16] Second, Plaintiff's Complaint alleges that Defendant RGSI provides Defendant RCOM with "[sales], advertising, customer contacts, and a continuous flow of business in the State of California." (SAC ¶ 9.) Although Defendant RGSI may not be authorized to do business on behalf of RCOM or RCUK, that level of corporate formality is not required. Rather, the question is whether the parties' relationship makes it reasonably certain that

---

[16] (Defendants RCOM and RCUK's Reply Brief in Support of their Motion to Dismiss at 9, hereafter, "Reply Dismiss," Docket Item No. 51.)

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Defendants will be notified of the service.[17]  Here, Defendants do not deny that Defendant RGSI

2  promptly notified Defendants RCOM and RUCK that it had been served.[18]  (Reply Dismiss at 9-10.)

3        Accordingly, the Court DENIES Defendants RCOM and RCUK's Motion to Dismiss for

4  Lack of Service.

5       **3.     Failure to State a Claim**

6        Defendants RCOM and RCUK move to dismiss Plaintiff's Sixth and Eighth Causes of

7  Action on the ground that Plaintiff fails to state an actionable claim.  (RCOM & RCUK's Motion to

8  Dismiss at 12.)  Defendants RCII and RGSI join in the Motion.  (RCII & RGSI's Motion to Dismiss

9  at 1-2.)

10        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against

11  a defendant for failure to state a claim upon which relief may be granted.  Dismissal may be based

12  on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

13  cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990);

14  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of

15  evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be

16  true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los

17  Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of

18  the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

19        However, mere conclusions couched in factual allegations are not sufficient to state a cause

20  of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845

21  F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

22  that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is

23  plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

24  _____

25      [17]  See Halo Elecs., Inc. v. Bel Fuse Inc., No. C-07-06222 RMW, 2010 U.S. Dist. LEXIS 64025, at \*5 (N.D. Cal. June 14, 2010).

26      [18]  See, e.g., Khachatryan v. Toyota Motor Sales, U.S.A., Inc., 578 F. Supp. 2d 1224, 1227

27  (C.D. Cal. 2008) (the fact that a Japanese corporation was actually put on notice as a result of service on American distributor supported finding of "general manager" status).

28

1   reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129

2   S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory

3   'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

4   claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

5   Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by

6   amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

7                      **a.     Plaintiff's Sixth Cause of Action**

8           Defendants move to dismiss Plaintiff's Sixth Cause of Action for a violation of Cal. Bus. &

9   Prof. Code § 14245 on the ground that Plaintiff does not have a California trademark.  (RCOM &

10   RCUK's Motion to Dismiss at 12.)

11          Cal. Bus. & Prof. Code § 14245 prohibits use, "without the consent of the registrant, [of] any

12   reproduction, counterfeit, copy, or colorable imitation of a mark *registered under this chapter* in

13   connection with the sale, distribution, offering for sale, or advertising of goods or services . . . ."

14   Cal. Bus. & Prof. Code § 14245 (emphasis added).  Thus, to state a claim under this statute, a

15   plaintiff must have registered its trademark with the State of California.  Id.

16          Here, the parties do not dispute that Plaintiff does not have a California state trademark

17   registration.  (RCOM & RCUK's Motion to Dismiss at 12; Dismiss Opp'n at 18.)  Based on

18   Plaintiff's concession that it does not currently have a California trademark, the Court finds that

19   Plaintiff does not have standing to pursue a § 14245 claim.  However, Plaintiff contends that it has

20   now submitted the iCall mark for registration with the California Secretary of State, and requests

21   that the Court grant it leave to re-file after the registration has been obtained.  (Dismiss Opp'n at 18.)

22          Accordingly, the Court GRANTS Defendants' Motions to Dismiss Plaintiff's Sixth Cause of

23   Action with leave to amend after Plaintiff obtains its California registration.

24                      **b.     Plaintiff's Eighth Cause of Action**

25          Defendants move to dismiss Plaintiff's Eighth Cause of Action on the ground that Cal. Bus.

26   & Prof. Code § 14415 does not create a private right of action.  (RCOM &  RCUK's Motion to

27   Dismiss at 12.)  Plaintiff contends that Cal. Bus. & Prof. Code § 14402 and

28                                                    13

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  § 14415 together provide for the right to an injunction for trademark infringement.  (Dismiss Opp'n

2  at 18.)

3  Under the California Trade Name Statute, Cal. Bus. & Prof. Code §§ 14400-14416, the first

4  entity to file articles of incorporation and use the corporate name set forth in those articles is entitled

5  to a presumption that it has an exclusive right to use that name within California.  "Section 14402,

6  [in turn], provides for injunctive relief for violations of the rights set out in the statute."  Accuride

7  International, Inc. v. Accuride Corp., 871 F.2d 1531, 1539-40 (9th Cir. 1989); see also Mallard

8  Creek Industries, Inc. v. Morgan, 65 Cal. Rptr. 2d 461, 466 (Cal. Ct. App. 1997).  Cal. Bus. & Prof.

9  Code § 14415 further provides a "presumption applicable to articles of incorporation and certificates

10  of qualification."

11  Here, although improperly entitled "Violation of Cal. Bus. & Prof. Code § 14415," Plaintiff's

12  Eighth Cause of Action specifically alleges that "Plaintiff is entitled to injunctive relief pursuant to

13  California Business and Professions Code §§ [sic] 14402."  (SAC ¶ 122 (emphasis added).)

14  Defendants do not contest that § 14402 does in fact provide a private cause of action.[19]

15  Accordingly, the Court DENIES Defendants' Motions to Dismiss Plaintiff's Eighth Cause of

16  Action.

17  **C.**  **Plaintiff's Motion for a Preliminary Injunction**

18  Plaintiff moves for a preliminary injunction on the ground that Defendants' use of the

19  Reliance iCall mark allegedly creates customer confusion with Plaintiff's federally-registered iCall

20  mark.  (Injunction Motion at 13.)  Specifically, Plaintiff seeks an Order enjoining Defendants from:

21  (1) using the iCall mark alone or in combination with other words; (2) using the mark Reliance iCall

22  in an Internet domain name, or in any other medium; (3) using any representations of fact in

23  connection with its products which are likely to cause confusion; and (4) using the iCall mark to

24  label, identify, promote, advertise, sell or offer any products or services in interstate commerce.

25

26

27  _____
[19] (Reply Dismiss at 10.)

28  14

United States District Court

For the Northern District of California

(See id., Ex. 5 at 2.)  Defendants contend, among other things, that Plaintiff cannot prove likelihood of success because consumers are not confused between the parties' two marks.[20]

A preliminary injunction is a provisional remedy, the purpose of which is to preserve the status quo and to prevent irreparable loss of rights prior to final disposition of the litigation.  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  It is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.  Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 375-76 (2008).  A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  Id. at 374.  If a plaintiff cannot establish likelihood of success on the merits, the trial court should deny a plaintiff's motion for a preliminary injunction.  Id.

To prevail on the merits of its trademark infringement action, a plaintiff must show: (1) ownership of an enforceable right in a trademark; and (2) that a defendant's use of the mark creates a likelihood of consumer confusion.  Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985).  Here, the parties do not dispute that Plaintiff registered and owns the iCall mark.  The Court therefore focuses its inquiry as to whether or not Defendants' use of the Reliance iCall mark creates a likelihood of customer confusion.

In determining whether or not there is a likelihood of confusion, a court weighs the following factors: (1) similarity of the marks; (2) proximity of the goods; (3) marketing channels used; (4) the strength of the mark; (5) evidence of actual confusion; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) the likelihood of expansion of the product lines.  See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).  In the Internet context, the first three factors are the most important in

---

[20] (Defendants' Opposition Regarding RCOM and RCUK's Motion to Dismiss the Second Amended Complaint, and RCII and RGSI Motion to Dismiss the Second Amended Complaint at 1, hereafter, "Injunction Opp'n," Docket Item No. 47.)

15

1    determining likelihood of confusion.  <u>Perfumebay.com Inc. v. eBay Inc.</u>, 506 F.3d 1165, 1173 (9th

2    Cir. 2007).

3           **1.      Similarity of the Marks**

4           At issue is whether the marks are similar.

5           "The similarity of the marks will always be an important factor."  <u>Brookfield Commc'ns.,</u>

6    <u>Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999).   The court assesses

7    the relevant marks as they appear in full in the marketplace, judging similarity by the marks'

8    appearance, sound and meaning.  <u>Id.</u>

9           Here, the marks at issue appear as follows:

10

11             

12

13          The Court finds that although iCall is completely incorporated into Defendants' mark,

14   Plaintiff has not shown sufficient similarity between the two marks to support its claim for a

15   preliminary injunction.  First, as to appearance, Plaintiff's mark appears on one line in blue and

16   white text, whereas Defendants' mark appears on two lines, with a stylized "RELIANCE" displayed

17   prominently on top in bold font, and the "iCall" term in white text only with a different font.

18   Second, the marks also do not sound the same because the additional word "Reliance" is used in

19   Defendants' mark.[21]   The addition of "Reliance" also could impart a different meaning to some

20   customers, as it is the first term in the mark.[22]  Thus, the Court finds that this factor does not weigh

21   in Plaintiff's favor.

22

23   _____

24          [21]  <u>See, e.g.</u>, <u>Entrepreneur Media v. Smith</u>, 279 F.3d 1135, 1145 (9th Cir. 2002) (adding
     "Illustrated" to "Entrepreneur" mark could create a "noticeable" difference because it made the
     defendant's mark "twice as long - to the eye and the ear").

25

26          [22]  <u>See, e.g.</u>, <u>Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing & Publishing Co.</u>
     <u>v. Meredith Corp.</u>, 991 F.2d 1072, 1078 (2d Cir. 1993) (defendant's "Parents Digest" mark was not
     sufficiently similar to plaintiff's "Parents" mark to tip the scales towards the issuance of a
27   preliminary injunction).

28

                                                        16

**2.** **Proximity of the Goods and the Degree of Care Likely to be Exercised by the Purchaser**

At issue is the proximity of the parties' goods and whether consumers are likely to associate their products.

Related goods are generally more likely than unrelated goods to confuse the public. Brookfield, 174 F.3d at 1055-56. In evaluating the proximity of the goods, a court must focus on consumers and ask whether they are likely to associate the two products. Id. Similarly, the sixth Sleekcraft factor focuses on the type of the two goods involved and the degree of care likely to be exercised by the purchaser. Maxim Integrated Prods., Inc., v. Quintana, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009)

Here, the parties do not contest that they both offer Internet calling services. (Injunction Motion at 17; Injunction Opp'n at 16.) Defendants, however, contend that they target individual Indian expatriate consumers that use other Reliance products, whereas Plaintiff targets both individuals and businesses. (Injunction Opp'n at 16, 17.) Even assuming these differences, both parties sell their services in the same specific field of VoIP products. Since the parties' services are both sold over the Internet, Internet consumers are likely to exercise less effort in distinguishing between products. Thus, the Court finds that these factors weigh in favor of Plaintiff.

**3.** **Marketing Channels Used**

Plaintiff contends that both parties "utilize the Internet as the primary marketing channel for VoIP services." (Injunction Motion at 17.) Defendants respond that the parties target different consumers through different websites inside the Internet forum. (Injunction Opp'n at 16.)

The use of "convergent marketing channels" increases the likelihood of consumer confusion. Sleekcraft, 599 F.2d at 353. Here, although it is true that both parties use the "Internet" for their marketing, the "Internet" may be an overbroad designation for companies that sell Internet calling services. See, e.g., Quia Corp. v. Mattel, Inc., No. 10-1902 JF, 2010 U.S. Dist. LEXIS 68237 at *27 (N.D. Cal. June 15, 2010) ("Though both products are marketed and sold on the Internet, this fact,

17

1    without more, is insufficient to demonstrate that this factor supports a finding of consumer

2    confusion.")

3          Here, within the Internet, it is undisputed that iCall primarily markets its products on the

4    Apple store website, and that Defendants do not have an application for the iPhone or iPod.  Plaintiff

5    also does not dispute Defendants' contention that the Reliance iCall service is primarily marketed to

6    current Reliance customers through links on affiliated Reliance websites and through targeted

7    customer communications.  Thus, the Court finds that this factor does not weigh in Plaintiff's favor.

8          **4.    The Strength of the Mark**

9          Plaintiff contends that their iCall mark is suggestive, and has been "strengthened by such

10   factors as extensive advertising, length of exclusive use, and public recognition."  (Injunction

11   Motion at 18.)  Defendants respond that "iCall" is a descriptive term that exists in a crowded field.

12   (Injunction Opp'n at 8-12.)

13         "The strength of a mark is determined by its placement on a continuum of marks from

14   'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection;

15   to 'arbitrary' or 'fanciful,' awarded maximum protection."  E. & J. Gallo Winery v. Gallo Cattle

16   Co., 967 F.2d 1280, 1291 (9th Cir. 1992) (citation omitted).  If the plaintiff's mark is weak,

17   consumers are less likely to be confused.  Id.  Moreover, where a plaintiff's mark resides in a

18   crowded field, the mark loses some of its strength, and it is less likely that consumers will be

19   confused.  Halo Mgmt. LLC v. Interland, Inc., 308 F. Supp. 2d 1019, 1036-37 (N.D. Cal. 2003)

20   (denying plaintiff's motion for a preliminary injunction, and noting that plaintiff would have

21   difficulty establishing likelihood of confusion between their "HALO" mark and defendant's

22   "BLUEHALO" mark because the field was crowded).

23         Here, Defendants have submitted documentary evidence that shows that the term iCall is in

24   widespread use for similar goods and services, such as "iCallGlobe," "iCall Anywhere," and "iCall

25   International."[23]  Thus, the Court finds that this factor does not weigh in Plaintiff's favor.

26   _____

27         [23]  (Declaration of Rachel Hofstatter in Support of Defendants' Opposition to Plaintiff's
     Motion for a Preliminary Injunction, Ex. C, Docket Item No. 47.)

28                                                    18

United States District Court

For the Northern District of California

### 5. Evidence of Actual Confusion

Plaintiff contends, citing a metrics report, that it has actual evidence of confusion because the RelianceiCall.com website currently derives a majority of its search engine traffic from Internet visitors who are searching for the term 'iCall.'" (Injunction Motion at 19; see also Declaration of Arlo Gilbert in Support of Plaintiff's Motion for a Preliminary Injunction, Ex. 11, Docket Item No. 33.)

While evidence of actual confusion is not required, it "constitutes persuasive proof that future confusion is likely." Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002).

Here, Defendants counter that Plaintiff's algorithm search data report is not actual confusion evidence, as it does not show that the use of two marks has led to confusion. (Injunction Opp'n at 15.) Defendants further contend that Plaintiff has failed to present any study showing a single customer was actually confused by the two marks. Based on the parties' conflicting contentions, the Court finds that this factor is neutral.

### 6. Defendants' Intent in Selecting the Mark

Plaintiff contends that Defendants intentionally chose the Reliance iCall name to benefit from Plaintiff's goodwill. (Injunction Motion at 18.)

"This factor favors the plaintiff where the alleged infringer adopted [its] mark with knowledge, actual or constructive, that it was another's trademark." Brookfield, 174 F.3d at 1059 (citation omitted). "[T]his factor is only relevant, [however], to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark." Id. Where a defendant knowingly adopts a mark similar to another's, the court may presume an intent to deceive. Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993).

Here, in support of its contention, Plaintiff relies on: (1) a LinkedIn.com resume of one of Defendants' employees, stating that the company "studied the competition" to develop the relianceicall.com website; and (2) the fact that Reliance has not registered its Reliance iCall mark in the United States. (Id.) Defendants respond that its use of the Reliance iCall mark is consistent with

19

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   its past branding activities, and that Plaintiff's contentions as to bad faith are purely speculative.

2   (Injunction Opp'n at 17-18.)  Based on such a minimal record, the Court cannot determine

3   Defendants' intent at this time.  Thus, the Court finds that this factor is neutral.

4          **7.**       **Likelihood of Expansion of the Product Lines**

5         This factor is essentially irrelevant where the conflicting marks are already being used in the

6   same market for nearly identical goods.  Maxim, 654 F. Supp. 2d at 1034.  Here, the parties do not

7   dispute that nearly identical VoIP goods and services are involved.  (Injunction Motion at 19;

8   Injunction Opp'n at 2-3.)  Thus, the Court finds that this factor is neutral.

9         In its evaluation of several of these factors, Plaintiff relies on Maxim and Perfumebay to

10  support its contention that consumers would likely be confused.  These cases are distinguishable.  In

11  Maxim, the Court found the defendant's "My-iButton" mark to be similar to the plaintiff's "iButton"

12  mark.  654 F. Supp. 2d at 1024.  This case is inapposite because the Court in Maxim found that the

13  addition of the term "my" did not change the meaning of the mark.  Id. at 1031-32.  Moreover, the

14  Court found that Maxim's mark was strong.  Id. at 1033.  Finally, unlike here, there was no evidence

15  in Maxim that the term "iButton" was used extensively by others in the relevant industry.  Id.

16  Perfumebay.com is also distinguishable.  506 F.3d at 1174.  The Ninth Circuit in Perfumebay.com

17  found that the first three Sleekcraft factors weighed heavily in the plaintiff's favor.  Id. at 1174-75.

18  Here, Plaintiff has not established that its and Defendants' marks were substantially similar, nor that

19  the parties used the same marketing channels.

20         On balance, the Court finds that the Sleekcraft factors do not weigh in Plaintiff's favor.

21  However, nothing in this Order is intended to foreclose Plaintiff's ability to prove likelihood of

22  confusion at a later stage of the litigation.

23         Accordingly, the Court DENIES Plaintiff's Motion for a Preliminary Injunction.

24                       **IV.  CONCLUSION**

25         The Court GRANTS in part and DENIES in part the parties' various Motions as follows:

26         (1)       Defendants' Motion to Transfer is DENIED;

27

28                            20

United States District Court

For the Northern District of California

(2)     Defendants RCOM and RCUK's Motion to Dismiss is GRANTED in part and DENIED in part as follows:

      (a)     Motion to Dismiss for Lack of Personal Jurisdiction is DENIED without prejudice;

      (b)     Motion to Dismiss for Lack of Service is DENIED;

      (c)     Motion to Dismiss Plaintiff's Sixth Cause of Action is GRANTED with leave to amend; and

      (d)     Motion to Dismiss Plaintiff's Eighth Cause of Action is DENIED.

(3)     Plaintiff's Motion for a Preliminary Injunction is DENIED.

The Court GRANTS Plaintiff jurisdictional discovery as to Defendants RCOM and RCUK and sets the following schedule:

(1)     The parties shall complete jurisdictional discovery on or before **December 3, 2010.**

(2)     Once jurisdictional discovery is completed, the parties shall appear for an Interim Case Management Conference on **December 13, 2010 at 10 a.m.**

(3)     On or before **December 3, 2010**, the parties shall file a Joint Case Management Conference Statement. The Statement shall include, among other things, undisputed facts defining the relationships between and among the various entities named as Defendants in the Complaint, and their ownership, control and operation of the relianceicall.com domain name, the relianceicall.com website (including creation, maintenance and ownership of files), the server on which relianceicall.com is housed, the Reliance iCall software, any telecommunications networks used in the Reliance iCall business and the Reliance iCall business itself.

Dated: September 16, 2010

_____
JAMES WARE
United States District Judge

21

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Charles Carreon chas@charlescarreon.com
Dylan Ruga druga@steptoe.com
Michael Richard Heimbold mheimbold@steptoe.com
Michael Allan mallan@steptoe.com
Rachel M. Hofstatter rfofstatter@steptoe.com

**Dated: September 16, 2010**                    **Richard W. Wieking, Clerk**

                                                 **By:      /s/ JW Chambers**
                                                      **Elizabeth Garcia**
                                                      **Courtroom Deputy**

**United States District Court**
For the Northern District of California

# EXHIBIT H

# Apple Trademark List

The following is a list of Apple's trademarks and service marks.

When using the marks in publications that will be distributed only in the United States, include the appropriate TM, SM, or ® symbol on first use. For publications that will be distributed outside the United States, do not include trademark symbols. Instead use the appropriate trademark attribution notice, for example: Mac and Mac OS are trademarks of Apple Inc., registered in the U.S. and other countries.

The list also includes one or more suggested generic terms for each trademark. For all publications, include an appropriate generic term after the trademark the first time it appears. Thereafter, the generic term should appear frequently with the trademark. (Note: These generic terms are only suggestions, and there may be other words that are equally appropriate.)

Remember that trademarks are adjectives, and cannot be made plural or possessive.

For more information on how to use Apple's trademarks, refer to the document titled, "Guidelines for Using Apple Trademarks," or contact the Trademark team.

The absence of a product or service name or logo from this list does not constitute a waiver of Apple's trademark or other intellectual property rights concerning that name or logo.

| APPLE'S TRADEMARKS | GENERIC TERM(S) |
|---|---|
| AirDrop™ | software feature |
| AirMac® | wireless hardware/software solution |
| AirPlay® | software feature |
| AirPort® | wireless hardware/software solution |
| AirPort Express® | wireless hardware/software solution |
| AirPort Extreme® | wireless hardware/software solution |
| AirPrint™ | software feature |
| AirTunes® | application program |
| A.Pack® | software feature |
| Aperture® | application program |
| Apple® | computers, computer software, computer peripherals, etc. |
| Apple logo® | |
| Apple Cinema Display® | computer monitor |
| AppleLink™ | communication network/computer software |
| Apple Media Series™ | training materials |
| Apple Remote Desktop™ | remote desktop software |
| AppleScript® | application program |
| AppleScript Studio® | development software |
| AppleShare® | server software |
| Apple Studio Display™ | computer monitor |
| AppleTalk® | network system |
| Apple TV® | digital media extender |
| AppleVision™ | computer display |
| AppleWorks® | application program |
| Aqua® | user interface |
| Audio Units logo™ | |
| Back to My Mac® | software feature |
| Bonjour® | networking technology |
| Bonjour logo® | |

## Legal Information

**End User Software License Agreements**
**Hardware Warranties**
**Privacy Policy**
**iTunes Store Terms**
**Sales Policies**
  Apple Global Online Support site (AGOS)
  Apple Online Store
  Apple Online Store for K12 Schools
  Apple Online Store for Higher Education
  Retail Store
  Apple Online Store for Education Individuals
  Apple Authorized U.S. Reseller
**Service Products**
  AppleCare Protection Plan for 1:1 Learning Solutions (PDF)
  AppleCare Service Plan
  AppleCare Protection Plan
  AppleCare Protection Plan for iPhone
  AppleCare Protection Plan for iPad
  AppleCare Repair Agreement
  AppleCare Parts Agreement
  Bomgar Remote Support Software
  AppleCare Latin America Extended Service Agreement
  AppleCare Premium Service and Support Plan Terms
  and Conditions
  AppleCare Technical Support Services Terms and Conditions
  Remote Access Technical Assistance Terms and Conditions
  AppleCare+ for iPhone
  AppleCare+ for iPad
**Terms of Service**
  Web Site Terms and Conditions of Use
  Apple Print Services Terms of Use
  Apple Print Services Sales Policies & Ordering Information
  iCloud Terms of Service
  One to One Terms and Conditions
  iChat Account Terms of Service
  iTunes Store Terms of Service
  iTunes Store Gift Certificates and Allowances Terms
  and Conditions
  iTunes Store Terms of Sale
  Apple Support Communities Terms of Use
  Repair Terms and Conditions
    Retail Store Service
    General Service
  Express Replacement Service for iPhone
    In Warranty Terms and Conditions
    Out of Warranty Terms and Conditions
  Training Service Terms and Conditions
**Policies**
  Unsolicited Idea Submission Policy
  Privacy Policy
**Trademark, Copyright and Intellectual Property**
  Trademark List
  Copyright
  Apple Web Badges
  Piracy Prevention
  Guidelines for Trademarks and Copyrights
  FileMaker Legal Information
  NeXT Trademark List
**Training and Certification Agreements and Policies**
**Legal Contacts**
**Export Compliance**
**Supplier Provisions**

| Boot Camp® | application program |
|---|---|
| Carbon® | software technology |
| Charcoal® | computer font |
| Chicago® | computer font |
| Cinema Tools™ | application program |
| Claris® | software |
| Cocoa® | software technology |
| Cocoa Touch® | software technology |
| ColorSync® | application program |
| ColorSync logo® | |
| Cover Flow® | application program |
| Dashcode® | developer software |
| DVD@CCESS™ | software feature |
| DVD Studio Pro® | application program |
| Educator Advantage™ | marketing program |
| eMac® | computer |
| EtherTalk™ | interface card/network |
| Exposé® | computer software |
| FaceTime® | video calling |
| FairPlay® | software technology |
| FileVault® | application program |
| Final Cut® | application program |
| Final Cut Pro® | application program |
| Final Cut Studio® | application program |
| Finder® | operating system software |
| FireWire® | serial bus |
| FireWire compliance logo™ | |
| FireWire logo™ | |
| FireWire symbol® | |
| FlyOver™ | software feature |
| FontSync® | application program |
| GarageBand® | application program |
| Geneva® | computer font |
| Guided Access™ | operating system feature |
| HyperCard® | application program |
| HyperTalk™ | application program |
| iBook® | computer |
| iBooks® | application program |
| iCal® | application program |
| iChat® | application program |
| iDVD® | application program |
| iFrame Logo™ | video format |
| iLife® | suite of application programs |
| iMac® | computer |
| ImageWriter® | printer |
| iMessage™ | software feature |
| iMovie® | application program |
| Inkwell® | application program |

| Instruments® | developer software |
|---|---|
| iPad® | mobile digital device |
| iPhone® | mobile digital device |
| iPhoto® | application program |
| iPod® | mobile digital device |
| iPod classic® | mobile digital device |
| iPod Hi-Fi® | speakers |
| iPod nano® | mobile digital device |
| iPod shuffle® | mobile digital device |
| iPod Socks® | holder for computer hardware and consumer electronics |
| iPod touch® | mobile digital device |
| iSight® | camera |
| iTunes® | application program |
| iTunes Logo® | application program |
| iTunes Pass® | online store |
| iTunes U® | feature of online store |
| iWeb™ | application program |
| iWork® | suite of application programs |
| Jam Pack® | computer software |
| Keychain® | operating system feature |
| Keynote® | application program |
| LaserWriter™ | printer |
| Launchpad™ | operating system features |
| LiveType® | application program |
| LocalTalk™ | computer cable system/network |
| Logic® | application program |
| Logic Studio® | application program |
| Mac® | computer |
| Mac logo® | |
| MacApp® | application program |
| MacBook® | computer |
| MacBook Air® | computer |
| MacDNS® | application program |
| Macintosh® | computer |
| Macintosh Products Guide® | online catalog |
| Mac OS® | operating system software |
| Mac Pro® | computer |
| MacTCP® | application program |
| Made for iPad logo™ | |
| Made for iPhone logo™ | |
| Made for iPod logo® | |
| MagSafe® | power adapters |
| MainStage® | application program |
| Mission Control™ | operating system feature |
| Monaco® | computer font |
| Multi-Touch™ | touchscreen interface |
| NetInfo™ | computer software |
| Newton™ | operating system software |

| | |
|---|---|
| New York® | computer font |
| Numbers® | application program |
| Objective–C® | computer software |
| OfflineRT™ | software feature |
| Open Directory logo® | |
| OpenCL™ | software technology |
| OpenPlay® | application program |
| OS X® | operating system software |
| Pages® | application program |
| Passbook® | application program |
| Photo Booth® | application program |
| Photocasting™ | digital content delivery service |
| Pixlet® | compression application program |
| Podcast Logo® | application feature |
| PowerBook® | computer |
| Power Mac® | computer |
| ProDOS™ | operating system software |
| Quartz® | graphics and display technology |
| QuickDraw® | application program |
| QuickTime® | application program |
| QuickTime Broadcaster™ | application program |
| QuickTime logo® | |
| Retina™ | display |
| Rosetta® | application program |
| Safari® | application program |
| Sand® | computer font |
| Shake® | application program |
| Sherlock® | application program |
| Siri® | voice recognition software |
| Skia™ | computer font |
| Smart Cover® | protective cover and stand |
| SnapBack™ | application feature |
| Soundtrack® | application program |
| Spaces® | operating system feature |
| Spotlight® | software utility |
| StyleWriter™ | printer |
| SuperDrive® | computer media device |
| Textile® | computer font |
| There's an app for that® | slogan |
| Think different® | slogan |
| Time Capsule® | wireless hard drive/Wi-Fi base station |
| Time Machine® | application program |
| TrueType® | font technology |
| Tubes® | cases for computer hardware and consumer electronics |
| Ultrabeat® | software feature |
| Velocity Engine™ | vector processing unit |
| WaveBurner® | application program |
| WebObjects® | software |

10/26/2012 10:54 AM

| WebScript™ | computer software |
|---|---|
| Works with iMovie logo™ | |
| Works with iPhone logo® | |
| Xcode® | developer software |
| Xgrid® | application program |
| Xsan® | application program |
| Xserve® | server |

| APPLE'S SERVICE MARKS | GENERIC TERM(S) |
|---|---|
| A Comprehensive Study of Final Cut Pro™ | training course |
| A Comprehensive Study of iLife™ | training course |
| A Comprehensive Study of Motion™ | training course |
| ACOT™ (Apple Classrooms of Tomorrow) | education services |
| ACOT²℠ | education services |
| ACTC Boot Camp℠ | training course |
| Administering Final Cut Server℠ | training course |
| Advanced Editing Techniques in Final Cut Pro™ | training course |
| Advanced Techniques in Logic Pro™ | training course |
| An Introduction to Administering Final Cut Server™ | training course |
| An Introduction to Aperture℠ | training course |
| An Introduction to Color℠ | training course |
| An Introduction to Color Correction in Final Cut Studio℠ | training course |
| An Introduction to DVD Studio Pro™ | training course |
| An Introduction to Final Cut Pro™ | training course |
| An Introduction to Final Cut Pro, Prime Time™ | training course |
| An Introduction to Final Cut Express℠ | training course |
| An Introduction to GarageBand℠ | training course |
| An Introduction to iLife™ | training course |
| An Introduction to iWork™ | training course |
| An Introduction to Logic Express and Logic Pro™ | training course |
| An Introduction to Motion™ | training course |
| An Introduction to Sound Editing in Final Cut Studio℠ | training course |
| An Introduction to Soundtrack Pro™ | training course |
| An Overview of Final Cut Pro™ | training course |
| An Overview of Final Cut Server™ | training course |
| App Store℠ | online store |
| Apple® | various services |
| AppleCare® | service and support programs |
| Apple Certified Trainer℠ | certification services |
| Apple Consultants Network℠ | consultant services |
| Apple Desktop Service Certification℠ | training course |
| Apple Desktop Service Lab℠ | training course |
| Apple Portable Service Certification℠ | training course |
| Apple Portable Service Lab℠ | training course |
| Apple Store® | retail store services |
| Briefing Room℠ | feature of retail store |
| Complete My Album® | feature of online store |
| Final Cut Pro Advanced Editing℠ | training course |

| Genius® | customized recommendations |
|---|---|
| Genius Bar® | service and support program |
| Genius Bar logo® | service and support program |
| iAd® | mobile advertising platform |
| iBookstore℠ | online store |
| iCloud® | online service |
| iDisk® | online services |
| Introduction to Mac OS X℠ | training course |
| iMix® | feature of online store |
| Indie Spotlight℠ | feature of online store |
| The iTunes Download® | radio show, podcast |
| iTunes Extras® | online store |
| iTunes LP℠ | online store |
| iTunes Match℠ | online service |
| iTunes Music Store® | online music store |
| iTunes Plus® | feature of online store |
| iTunes Live® | online store, entertainment services |
| iTunes Store® | online store |
| Joint Venture® | retail service |
| Lion 101 – OS X Support Essentials 10.7 | training class |
| Lion 201 – OS X Server Essentials 10.7 | training class |
| .Mac® | online services |
| Mac.com® | Email service |
| Mac Integration Basics 10.7℠ | training course |
| Mac OS X Advanced Administration℠ | training course |
| Mac OS X Deployment℠ | training course |
| Mac OS X Directory Services℠ | training course |
| Mac OS X Security & Mobility℠ | training course |
| Mac OS X Server Essentials℠ | training course |
| Mac OS X Support Essentials℠ | training course |
| MobileMe® | online services |
| Motion Graphics and Effects in Final Cut Studio℠ | training course |
| onetoone® | service and support program |
| ProCare® | service and support program |
| Shop different™ | slogan |
| Vingle® | feature of online store |
| Xsan 2 Administration℠ | training course |

SPECIAL AND LICENSED TRADEMARKS AND/OR COPYRIGHTS
Use the trademark notation shown here the first time the trademark is mentioned in text in
U.S. publications. Include the credit line in all U.S and international publications in which the
trademark is mentioned.

In addition to the marks listed below, all FileMaker marks require the trademark notation the
first time the trademark is mentioned in U.S. publications and credit lines in all U.S. and
international publications in which the trademark is mentioned. For FileMaker, Inc.
trademarks, look on the Web at FileMaker, Inc..

For NeXT trademarks, look on the Web at http://www.apple.com/legal/trademark
/nexttmlist.html.

1-Click® is a registered trademark of Amazon.com, Inc. in the US and other countries. [Place a
® notation after the first mention of 1-Click in text in publications distributed in the US,
Europe, and Canada.]

10/26/2012 10:54 AM

ADDmotion is a trademark of Motion Works International, Inc.

Ad Lib is a trademark of Nick Nallick, used under license.

Adobe, the Adobe logo, Acrobat, the Acrobat logo, Distiller, PostScript, and the PostScript logo are trademarks or registered trademarks of Adobe Systems Incorporated in the U.S. and/or other countries.

AIX is a trademark of IBM Corp., registered in the U.S. and other countries, and is being used under license.

Apache: The Apache acknowledgement is now included in the code itself, in line with the new Apache Foundation license (2000). Credit in printed advertising materials is no longer required.

BLUEmagic is a trademark of Open Interface North America in the U.S. and other countries.

Bluetooth: The registered trademark symbol "®" should be added in superscript format immediately following the Bluetooth word mark wherever the word mark first appears on product packaging, products, web pages, and marketing pieces, and in textual information.

Whenever the Bluetooth word mark or logo is used it must be attributed with an appropriate trademark footnote, such as: The Bluetooth® word mark and logos are registered trademarks owned by Bluetooth SIG, Inc. and any use of such marks by Apple is under license.

The registered trademark symbol, ®, is to be printed as part of the logo. In the event that the use of the "®" symbol with the Bluetooth mark on a product, or as part of a product display feature, is impractical due to the small size of a Bluetooth mark, you may omit the "®" symbol on such product or product display feature, provided, however, that appropriate language identifying and attributing the Bluetooth marks is included.

BSD (4.4 Lite) operating system from UC Berkeley and others for Mac OS X and/or Mac OS X Server: All advertising materials mentioning features or use of this software must include the following acknowledgement: "This product includes software developed by the University of California, Berkeley, FreeBSD, Inc., The NetBSD Foundation, Inc., and their respective contributors." We must also obtain UCB's written permission prior to any endorsement or promotion of their software.

CDB is a trademark of Third Eye Software, Inc.

The CD Extra logo™ is a trademark of Sony Corporation.

DEC™, DECnet™, VMS™, and VAX™ are trademarks of Digital Equipment Corporation.

Dolby Laboratories: Manufactured under license from Dolby Laboratories. "Dolby," "Pro Logic," and the double-D symbol are trademarks of Dolby Laboratories. Confidential Unpublished Works, © 1992–1997 Dolby Laboratories, Inc. All rights reserved.

FaceSpan™ and FrontMost™ are trademarks of Software Designs Unlimited, Inc.

GeForce4 is a trademark of NVIDIA Corporation.

Helvetica®, Times®, and Palatino® are registered trademarks of Heidelberger Druckmaschinen AG, available from Linotype Library GmbH.

Intel, Intel Core, and Xeon are trademarks of Intel Corp: in the U.S. and other countries. [This attribution is not necessary unless Apple's own marks are specifically attributed.]

IOS is a trademark or registered trademark of Cisco in the U.S. and other countries and is used under license.

ITC Avant Garde Gothic® , ITC Bookman®, ITC Garamond®, ITC Zapf Chancery®, and ITC Zapf Dingbats® are registered trademarks of International Typeface Corporation.

Java is a registered trademark of Oracle and/or its affiliates.

LaserTools™ is a trademark of LaserTools Corporation.

MacDNS: Include the following copyright notice on end-user documentation only: "ThreadLib 1.04 © 1994 by Ari Halberstadt."

mLAN code: When the mLAN Trademark is used in an Apple catalogue, brochure or instruction manual, the following attribution statement must be included in a footnote: "mLAN™ is a

trademark of YAMAHA CORPORATION."

MobileComm is a registered trademark of Mobile Communications Corporation of America.

Netscape Navigator™ is a trademark of Netscape Communications Corporation.

Nomad is a registered trademark of Aonix and is used by Creative Technology Ltd. and/or its affiliates under license. [Apple may reproduce the Nomad trademark solely in connection with marketing the Creative products on related splash or computer screens or to accurately acknowledge interoperability BUT WE MUST INCLUDE the trademark attribution notice to Aonix in this instance.]

Notion is a trademark of Eidetic, Inc. All packaging and product labels must also include the following copyright notice: "© 1994, Eidetic, Inc. All rights reserved."

NuBus is a trademark of Texas Instruments.

OpenGL® or OpenGL Logo®: OpenGL is a registered trademark of Silicon Graphics, Inc.

OpenSSL by The OpenSSL Project (Mac OS X and/or Mac OS X Server): All advertising materials mentioning features or use of this software must include the following acknowledgement: "This product includes software developed by the OpenSSL Project for use in the OpenSSL Toolkit (http://www.openssl.org/)." We must also obtain the OpenSSL Project's written permission if we wish to use the names "OpenSSL Toolkit" or "OpenSSL Project" to endorse or promote software derived from the OpenSSL software.

The Photo CD logo™ is a trademark of Eastman Kodak Company.

Ping is a registered trademark of Karsten Manufacturing Corporation and is used in the U.S. under license.

PowerCD™ is a trademark of ZCI, Inc., Dallas, Texas.

PowerForms™ is a trademark of Sestra, Inc., a division of HealthCare Communications.

PowerPC™ and the PowerPC logo™ are trademarks of International Business Machines Corporation, used under license therefrom.

RealAudio™ and the RealAudio logo™ are trademarks of Progressive Networks, Inc.

The "Signalling disc watch design" is owned by Swiss Federal Railways SFR, spezialgesetzliche Aktiengesellschaft, Berne, Switzerland.

Smalltalk–80™ is a trademark of ParcPlace Systems.

SoftWindows™: Windows is a registered trademark of Microsoft Corporation and SoftWindows is a trademark used under license by Insignia from Microsoft Corporation. [Place a™ symbol after the first and most prominent use of the mark SoftWindows in text.]

SPEC® is a registered trademark of the Standard Performance Evaluation Corporation (SPEC). See http://www.spec.org for more information.

Sprocket: The following notice must appear on the Apple Game Sprocket Web site: "Sprocket is a trademark of MacTech Magazine, used by permission. The Apple Game Sprocket software has no association with MacTech Magazine."

SRS: Use one of the following as appropriate:

"The SRS Symbol is a registered trademark of SRS Labs, Inc."
"The word SRS is a registered trademark of SRS Labs, Inc."
"SRS and the SRS Symbol are registered trademarks of SRS Labs, Inc."
TextBridge® and Xerox® are registered trademarks of Xerox Corporation. [Place the trademark notation symbol (™ or ®) after the first mention of the marks in text and in the credit notice.]

Trinitron® is a trademark of Sony Corporation, registered in the U.S. and other countries.

UCB (ftpd) code from UC Berkeley and others for Mac OS X and/or Mac OS X Server: All advertising materials mentioning features or use of this software must include the following acknowledgement: "This product includes software developed by the University of California, Berkeley, FreeBSD, Inc., The NetBSD Foundation, Inc., and their respective contributors." We must also obtain UCB's written permission prior to any endorsement or promotion of their software.

UNIX® is a registered trademark of The Open Group.

VideoWorks is a trademark of Macromedia, Inc.

The Walk of Fame Star is a trademark of the Hollywood Chamber of Commerce.

X Window System is a trademark of the Massachusetts Institute of Technology.

The YouTube logo is a trademark of Google Inc. (Only necessary when Apple's or other party's logos are also attributed.)

OTHER APPLE PRODUCT OR SERVICE NAMES
If a product or service name is not listed under Apple's Trademarks or Apple's Service Marks, it should not be followed by a ™ or ® notation and should not be included in credit lines. However, if a product or service name includes Apple, Macintosh, or another Apple mark listed in this trademark list, do apply the correct trademark symbol (™ or ®) to that portion of the name for U.S. publications only. In addition, all Apple trademarks need to be given the correct attribution in the credit section of all U.S. and international publications.

Example:

The Apple® iMac® computer comes with iWeb™ software. — credit line: Apple and iMac are trademarks of Apple Inc., registered in the U.S. and other countries. iWeb is a trademark of Apple Inc.

SPECIAL COMMENTS
If you have any questions or comments regarding the list, please contact the Trademark team.

This list includes updates as of October 16, 2012.